

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| ISABEL G. BAEZA, Individually and d/b/a BAEZA'S TRUCKING, | § | No. 08-14-00186-CV |
| | § | |
| Appellant, | | Appeal from the |
| | § | |
| v. | | 143rd District Court |
| | § | |
| | | of Reeves County, Texas |
| HECTOR'S TIRE & WRECKER SERVICE, INC., | § | (TC 13-08-20450-CVR) |
| | § | |
| Appellee. | | |

## **O P I N I O N**

Isabel Baeza appeals from a judgment in favor of Hector's Tire & Wrecker Service, Inc. based on Baeza's breach of contract. Baeza raises two issues on appeal. First, Baeza contends the trial court erred in refusing to find that Hector's claim was barred by the affirmative defense of accord and satisfaction. Second, Baeza contends the evidence is legally and factually insufficient to support the trial court's award of damages. We conclude the evidence supports the trial court's determination that Baeza failed to meet its burden to establish the defense of accord and satisfaction. Further, although we agree there is insufficient evidence to support the amount of damages awarded, we conclude there is some evidence that Hector's suffered damages as the result of Baeza's breach of contract. We therefore reverse the trial court's judgment and remand for a new trial on damages, unless Hector's accepts the remittitur we suggest below.

**BACKGROUND**

Baeza is the owner of a trucking company that had contracts to haul paving materials from a plant in Reeves County to locations designated by its customers. Because Baeza could not fully accommodate the needs of his customers, he contacted Hector Garcia, the owner of Hector's Tire & Wrecker Service, Inc., in July 2010 to assist his company in providing hauling services to his customers. Hector's had previously performed unrelated work for Baeza in 2006 and 2007.

Hector Garcia on behalf of Hector's Tire & Wrecker Service entered into an oral agreement with Baeza in which Hector's agreed to provide hauling services to Baeza on an as-needed basis. The parties agreed that when requested by Baeza, Hector's would send a truck to a plant in Reeves County to pick up materials and deliver the materials to a designated location. The parties agreed that the plant would furnish Hector's driver with a "load ticket" specifying the amount of each load picked up from the plant, and Hector's would then provide the load tickets to Baeza. In turn, Baeza would bill its customers for the loads and would pay Hector's after receiving payment from his customers. The rate for payment on the load tickets was set by Baeza, and was based on the amount and type of a particular load. Hector's agreed to pay Baeza a 5 percent commission on the amounts billed for each load.

Hector's began performing work for Baeza in July 2010, but shortly thereafter a dispute arose regarding whether Baeza was properly compensating Hector's under the terms of their agreement. Because of this unresolved dispute, Hector's stopped providing services to Baeza in late October or early November 2010.

Hector's subsequently retained an attorney who sent a demand letter to Baeza on or about April 11, 2011, claiming that Baeza owed Hector's $15,042.55 for unpaid load tickets. In the

2

letter, Hector's attorney further demanded that Baeza pay $250 in attorney's fees, and warned that if payment was not received within ten days, he would recommend to his client that a lawsuit be filed.

Although Baeza admittedly received the demand letter, neither Baeza nor any of his office staff directly responded to the letter. Instead, almost four months later, around July 31, 2011, Baeza sent Hector's two checks: one for $2,376.41 and one for $3,644, totaling $6,020.41. There were no notations on the checks to indicate they were being tendered in response to the demand letter, and in fact the notation lines on both checks were left blank. Further, the record does not indicate that Baeza sent a transmittal letter or made any other communication to Hector's explaining why he was sending the checks. Both checks were deposited by Hector's into its bank account in August 2011.

On December 14, 2012, Hector's attorney sent a second letter to Baeza, claiming that Baeza still owed Hector's $9,900.25 for unpaid services. The letter further stated that if payment was not received within 30 days, Hector's would assume the debt was valid, and proceed with the filing of a lawsuit. There is nothing in the record to reflect that Baeza responded to this letter.

Eight months later, Hector's sued Baeza, alleging a breach of contract and requesting $9,900.25 in damages and reasonable attorney's fees. In support of its claim, Hector's attached several invoices it had allegedly submitted to Baeza and later supplemented its petition with a sworn account. The sworn account listed the invoice amounts that Hector's had allegedly submitted to Baeza, together with a list of the payments that Hector's had allegedly received. The account did not list any totals for the amounts billed to Baeza or the amounts received from Baeza, but it did list a final balance owed of $9,900.25. Baeza filed an answer verified by his office

3

manager, Denise Baeza (also known as Denise Villanueva), that denied Hector's claim and raised various affirmative defenses, including accord and satisfaction.

A bench trial was held on May 28, 2014. At trial, both parties acknowledged the existence of the parties' oral agreement and further agreed that Hector's was required to submit its load tickets to Baeza prior to receiving payments, and was also required to pay a 5 percent commission to Baeza on all amounts billed. However, the parties disagreed on: (1) whether Hector's had properly provided Baeza with all of the load tickets, as required for payment; (2) whether Baeza had properly paid Hector's for all of the load tickets it had submitted to Baeza; and (3) whether Baeza's tender of the two checks to Hector's in July 2011 constituted an "accord and satisfaction" fully discharging any debt Baeza owed to Hector's.

Hector Garcia testified that at the end of every week in which his company had performed work for Baeza, he routinely placed all of the load tickets he had received in an envelope, which he placed in a mailbox at Baeza's place of business. Hector Garcia further testified that he also generated an invoice, based on the total amount of load tickets he had received from the plant, which he then mailed to Baeza requesting payment. According to Hector Garcia, Baeza periodically sent him checks, but the amounts of the checks did not match his company's invoice amounts; in addition, Hector Garcia testified that Baeza failed to include any references on the checks and failed to provide any other communications that would have allowed him to correlate the checks to any particular invoice Hector Garcia had prepared or to the load tickets he had submitted to Baeza. Hector Garcia testified that he therefore maintained an internal accounting system in which he tracked the amounts of the invoices he had submitted to Baeza and the amounts of the payments that he had received from Baeza, which formed the basis of his sworn account.

4

This account was introduced into evidence as Plaintiff's Exhibit One, together with copies of all of the invoices that Hector's had allegedly sent to Baeza. This exhibit did not list any totals for the amounts owed or the amounts received, but listed a final balance owed of $9,900.25.

In her testimony, Baeza's office manager, Denise Villanueva, did not directly dispute the mathematical calculations in Hector's sworn accounting or question how Hector Garcia had arrived at $9,900.25 as the final balance due. Instead, she testified that based on her review of the records, she calculated that Baeza had paid Hector's in full for all of the charges submitted. In an apparent attempt to explain the discrepancies in the parties' calculations, Denise Villanueva testified that Hector's had not submitted invoices to Baeza as claimed, but rather that Hector's had instead only turned in load tickets to Baeza's office. According to Villanueva, she did not see Hector's invoices until after Hector's attorney sent his demand letter to Baeza in April 2011.

Villanueva testified that she calculated the amounts owed based on the original load tickets that Hector's provided, rather than on any invoices Hector's might have submitted. According to Villanueva, when she received the load tickets from Hector's, she would create her own invoices to send to Baeza's customers based on the amounts in the tickets, and that after the customers had paid Baeza, Villanueva would then pay Hector's based on the invoices that she had created. Villanueva further explained that she would deduct the 5 percent commission owed under the terms of the parties' agreement before making payment to Hector's. Villanueva acknowledged that she did not put any notations on the checks she sent to Hector's to indicate the account on which she was paying or that she had made a deduction for the 5 percent commission. Instead, she would only reference her own invoice number on the check stubs that she retained for her records.

5

According to Villanueva, when she received Hector's demand letter in April 2011, she went back and reviewed the load tickets submitted by Hector's, Baeza's invoices, and Baeza's check stubs.[1] Based on her review, Villanueva concluded that Baeza had failed to pay Hector's a total of $6,020.41 for certain load tickets that he had previously submitted.[2] Villanueva thereafter sent Hector's two checks in July 2011: one for $2,376.41, and another for $3,644, both of which cleared the bank in August 2011.[3] Villanueva also testified that after sending those two checks, she found another unpaid load ticket, and wrote a third check to Hector's in the amount of $596.62. Villanueva testified, however, that the third check had not cleared the bank at the time of trial, and Hector Garcia testified that he never received that check.

In an apparent attempt to establish that the checks Villanueva sent to Hector's in July 2011 constituted an "accord and satisfaction" of the parties' dispute, Villanueva testified that she believed there was a dispute between the parties at the time she sent the checks, and that she sent the checks after receiving the demand letter from Hector's attorney. Baeza's attorney argued that Baeza's actions in sending the checks in response to the demand letter were sufficient to establish that the checks were sent in "settlement in this case." The trial court expressly found that the facts in this case did not meet "the requirements of accord and satisfaction[.]"

At the close of evidence, the trial court ruled in Hector's favor, finding that the parties had

---

[1] At trial, Baeza introduced into evidence his invoices, together with cancelled checks, bank records, and other documentation regarding the payments it made to Hector's; however, Baeza did not submit into evidence the original load tickets that it had received from Hector's.

[2] Villanueva testified that her research also revealed that there may have been three or four "lost" load tickets, which Hector's claimed it had submitted, amounting to $1,155.05 in charges. However, at the time of trial, her office was still investigating whether Baeza had already paid Hector's for those tickets. Villanueva further explained that without the original load tickets, she would not be able to pay Hector's for those particular loads.

[3] Villanueva testified, however, that she inadvertently failed to "take off the five percent" from one of the checks that she wrote for $3,644, and stated that it should have instead been written for $3,461.80.

6

entered into a valid contract and that Baeza had breached the parties' contract. The court awarded damages to Hector's in the amount of $9,900.25, as requested in its petition, together with prejudgment interest and attorney's fees.

## ACCORD AND SATISFACTION

*Standard of Review and Burden of Proof*

In his first issue on appeal, Baeza contends the trial court erred by not finding Hector's claims were barred by the affirmative defense of accord and satisfaction. The party asserting the affirmative defense of accord and satisfaction has the burden of proof to establish its existence. *Group Med. & Surgical Serv., Inc. v. Leong*, 750 S.W.2d 791, 796 (Tex.App. – El Paso 1988, writ denied) (burden of proof is on the moving party to present evidence of the affirmative defense of accord and satisfaction); *see also Harris v. Rowe*, 593 S.W.2d 303, 306 (Tex. 1979) (same).

The trial court made an express finding that Baeza did not present sufficient evidence to meet its burden to establish the defense of accord and satisfaction. Findings of fact in a bench trial have the same force and dignity as a jury's verdict upon questions and are reviewed for legal and factual sufficiency of the evidence by the same standards. *Farrell v. Farrell*, 459 S.W.3d 114, 118 (Tex.App. – El Paso 2015, no pet.) (citing *Ortiz v. Jones,* 917 S.W.2d 770, 772 (Tex. 1996)); *see also Tierra Sol Joint Venture v. City of El Paso,* 311 S.W.3d 492, 498 (Tex.App. – El Paso 2009, no pet.).

When the party having the burden of proof suffers an unfavorable finding, the point of error challenging the legal sufficiency of the evidence is that the party established a fact or issue as "a matter of law." *Tierra Sol Joint Venture,* 311 S.W.3d at 498. In conducting our review, we must consider the evidence in the light most favorable to the trial court's finding, and indulge

7

every reasonable inference that would support it. *Id.* (citing *City of Keller v. Wilson,* 168 S.W.3d 802, 822 (Tex. 2005)); *see also Farrell*, 459 S.W.3d at 118 (the reviewing court must credit evidence that supports the trial court's finding if a reasonable fact finder could rely on that evidence, and disregard contrary evidence unless a reasonable fact finder could not).

When appealing the factual sufficiency of the evidence supporting an adverse finding on which the party had the burden of proof, the appellant must show that the adverse finding is against the great weight and preponderance of the evidence. *Thomas v. Layton,* 324 S.W.3d 150, 153 (Tex.App. – El Paso 2010, pet. denied) (citing *Southwestern Bell Tel. Co. v. Garza*, 164 S.W.3d 607, 620–21 (Tex. 2004)). In determining if a trial court's findings of fact were factually sufficient, we review all evidence in the record, including evidence contrary to the verdict. *Id*. We may set aside the verdict only if the trial court's finding is so against the great weight and preponderance of the evidence as to be clearly wrong or manifestly unjust. *Id.* Further, we may not substitute our judgment for that of the fact finder, even if we would have reached a different conclusion when reviewing the evidence. *Id.*; *see also Tierra Sol Joint Venture,* 311 S.W.3d at 498-99.

*The Common Law Defense of Accord and Satisfaction*

A party may assert the defense of accord and satisfaction under a common law doctrine, under statutory authority, or both. At trial, Baeza did not indicate which of these two theories he believed applied to his case, but makes reference to both theories in his brief. We therefore review the record to determine whether he met the requirements under either of these two theories.

The common law defense of "accord and satisfaction" rests upon a new contract, express or implied, in which the parties agreed to the discharge of an existing obligation by means of a lesser

8

payment tendered and accepted. *See Lopez v. Munoz, Hockema & Reed, L.L.P.*, 22 S.W.3d 857, 863 (Tex. 2000); *Melendez v. Padilla,* 304 S.W.3d 850, 852 (Tex.App. – El Paso 2010, no pet.). The term "accord" refers to the new agreement in which one party agreed to give or perform and the other to accept "something other than or different from what she is, or considers herself to be, entitled to." *Melendez,* 304 S.W.3d at 852-53. The term "satisfaction" refers to the actual performance of the new agreement, in which the party accepts the tendering of the lesser payment. *Id.*

To prevail under the common law theory of accord and satisfaction, the moving party is required first to establish the existence of a dispute between the parties. *Id.* at 853. It is the very existence of a dispute that provides the consideration for the parties' new contract and for the accord and satisfaction itself. *Milton M. Cooke Co. v. First Bank & Trust,* 290 S.W.3d 297, 304 (Tex.App. – Houston [1st Dist.] 2009, no pet.). If a pre-existing dispute is established, the moving party must then establish that the parties "specifically and intentionally agreed" that the tendering and acceptance of the reduced sum would discharge the underlying obligation that formed the basis of their dispute. *Melendez,* 304 S.W.3d at 853; *Milton M. Cooke Co.,* 290 S.W.3d at 304. Further, the moving party must establish that he tendered the reduced sum to the nonmoving party with an "unmistakable communication" to the nonmoving party that the tender of the reduced sum was upon the condition that acceptance would satisfy the underlying obligation. *Jenkins v. Henry C. Beck Co.,* 449 S.W.2d 454, 455 (Tex. 1969); *Richardson v. Allstate Texas Lloyd's,* 235 S.W.3d 863, 865 (Tex.App. – Dallas 2007, no pet.).

There is no doubt in the present case that Baeza established the first element of the defense of accord and satisfaction, as both parties agreed there was a "dispute" between the parties at the

9

time Baeza sent its two checks to Hector's in July 2011, three months after Hector's attorney sent its demand letter to Baeza requesting payment of over $15,000 in damages.   Therefore, the only issue left to consider is whether Baeza's tender of the reduced sum of $6,020.41 was made with an "unmistakable communication" to Hector's that accepting this sum was upon the condition that its acceptance would satisfy the entire underlying obligation, or that the parties "specifically and intentionally" agreed that the acceptance of the reduced sum would discharge all of Baeza's obligations to Hector's.

In his brief, Baeza fails to point to any evidence in the record to demonstrate that he provided any such communication to Hector's when tendering the checks, or that the parties entered into any agreement to resolve their entire dispute at that time; instead, Baeza relies solely on the facts that he sent two checks to Hector's after receiving the demand letter from Hector's attorney, and that Hector's accepted and cashed those checks.[4]   These facts, however, are insufficient, standing alone, to meet the burden to establish the defense of accord and satisfaction. Courts have long held that the mere acceptance of a tendered check is not enough to meet that burden.  *See, e.g., Lopez,* 22 S.W.3d at 863; *Jenkins,* 449 S.W.2d at 455; *Milton M. Cooke Co.,* 290 S.W.3d at 304; *Pate v. McClain,* 769 S.W.2d 356, 361-62 (Tex.App. – Beaumont 1989, writ denied) (citing *Infra–Pak v. Carlson Stapler & Shippers Supply,* 803 F.2d 862 (5th Cir. 1986) (a creditor's acceptance of a check in an amount less than a disputed dollar claim does not automatically discharge the entire debt)).

---

[4] Baeza correctly points out that the trial court mistakenly stated that it was not finding an accord and satisfaction based, in part, on the fact that Baeza tendered an amount that was less than the amount demanded by Hector's.   As set forth above, we recognize the very hallmark of "accord and satisfaction" is a party's acceptance of a payment that is less than the amount originally requested or demanded by the other party.   However, the trial court did not rest its decision solely on the fact that the amount tendered did "not match" the amount demanded. Instead, the trial court also based its decision on the fact that there was "nothing on the check[s] that indicate[]" that the parties intended for the tendering and acceptance of the checks to be an accord and satisfaction.

10

Instead, there must be some evidence in the record to establish that the parties intended for the tendered check to be payment in full of the parties' dispute. *Industrial Life Ins. Co. v. Finley,* 382 S.W.2d 100, 105-06 (Tex. 1964). For example, when a party includes a notation on a check or a transmittal letter indicating that the check is being tendered in "[f]ull and final settlement" of the parties' dispute, the acceptance and cashing the check with knowledge of this recital may be viewed as an unequivocal acceptance of the settlement offer, thereby establishing an accord and satisfaction of the dispute. *Id.* Under such circumstances, an accord and satisfaction will be established unless the opposing party presents some evidence to establish an express agreement that the check was to be accepted only as partial payment. *Id.* While no particular language is needed to put the other party on notice that the acceptance of a lesser sum is intended as an accord and satisfaction, the Texas Supreme Court has held that any such statement must be made in "plain, definite and certain" terms, and must "be so clear, full and explicit that it is not susceptible of any other interpretation." *Jenkins,* 449 S.W.2d at 455; *see also Pate,* 769 S.W.2d at 361-62.

In the present case, the record does not contain any evidence to establish that Baeza put Hector's on notice that the two checks it sent to Hector's were being tendered in full settlement of the parties' dispute. Neither check contained a notation that the checks were being tendered in full settlement of the parties' dispute, and neither of the checks was accompanied by a communication to that effect. Similarly, there is no evidence in the record to suggest that the parties otherwise came to any oral agreement regarding the effect of the checks.

Accordingly, we conclude that the evidence does not establish accord and satisfaction as a matter of law and that the trial court's finding that Baeza failed to meet its burden to establish the common law defense of accord and satisfaction is not against the great weight and preponderance

of the evidence.

*The Statutory Defense of Accord and Satisfaction*

In addition to the common law defense of accord and satisfaction, the Texas Business and Commerce Code provides an alternative method to establish the defense of accord and satisfaction when a person has tendered a negotiable instrument, such as a check, to another person who has made a claim against him. TEX.BUS.&COM. CODE ANN. § 3.311 (West 2002). In particular, the Code provides that a person may discharge a debt when: (1) that person in good faith tendered an instrument to the claimant as full satisfaction of the claim; (2) the amount of the claim was unliquidated or subject to a bona fide dispute; and (3) the claimant obtained payment of the instrument.

Once again, it is clear that there was a "bona fide dispute" at the time the checks were sent, and that Hector's "obtained payment" when the checks were accepted and cashed in August 2011. However, there was no evidence presented at trial that Baeza tendered the checks "as full satisfaction of the claim." We do note the trial court would not allow Villanueva to testify regarding her intent in sending the checks, believing that her "thought process" was not relevant to the suit. Unlike the common law defense of accord and satisfaction, the statutory defense of accord and satisfaction does take into account the defendant's state of mind in sending a negotiable instrument, as the Code expressly requires that the instrument be sent with a "good faith" intent for it to be a full settlement of a dispute. Accordingly, although Baeza does not raise this issue on appeal, we believe that the trial court may have erred by refusing to allow Villanueva to testify regarding her intent in sending the checks. However, we need not resolve this issue, as Baeza did not meet the remaining requirements under the Code to establish the statutory defense of accord

12

and satisfaction, and therefore, any such error would be harmless. *See Franco v. Franco,* 81 S.W.3d 319, 342 (Tex.App. – El Paso 2002, no pet.) (even if we were to agree that the trial court erroneously excluded evidence, we must still conduct a harm analysis to determine if the evidence was controlling on a material issue and is not cumulative); *Patel v. Kuciemba*, 82 S.W.3d 589, 594 (Tex.App. – Corpus Christi 2002, pet. denied) (error may not be predicated upon a ruling that admits or excludes evidence unless a substantial right of the party is affected).

As many courts have recognized, the remaining requirements of the Code are similar to the common law requirements for establishing accord and satisfaction. *Milton M. Cooke Co.,* 290 S.W.3d at 304 (section 3.311 does not conflict with the common-law doctrine of accord and satisfaction; rather, the statute is consistent with the doctrine as interpreted by Texas courts); *Case Funding Network, L.P. v. Anglo–Dutch Petroleum Intern., Inc.,* 264 S.W.3d 38, 50 (Tex.App. – Houston [1st Dist.] 2007, pet. denied) (Texas has adopted the Uniform Commercial Code's provisions on accord and satisfaction, which are consistent with the Texas courts' recognition of the common law doctrine of accord and satisfaction); *see* also TEX.BUS.&COM.CODE ANN. § 3.311, cmt. 3 ("Section 3–311 is based on a belief that the common law rule produces a fair result and that informal dispute resolution by full satisfaction checks should be encouraged."). As such, the person attempting to assert that a debt has been discharged under the Code by the tendering of an instrument must still establish that the nonmoving party was clearly made aware that the instrument was intended to discharge the debt prior to its acceptance.

The Code provides two methods for establishing this key element. First, subsection (b) provides that a claim will be discharged by the tendering and acceptance of a negotiable instrument "if the person against whom the claim is asserted proves that the instrument or an accompanying

written communication contained a conspicuous statement to the effect that the instrument was tendered as full satisfaction of the claim." For the same reasons that we concluded Baeza was unsuccessful in establishing the common law defense of accord and satisfaction, we also conclude that Baeza failed to meet the statutory requirements of the defense under this particular subsection. As discussed above, the undisputed evidence at trial revealed that Baeza failed to provide any notation on the checks, let alone a "conspicuous statement," to the effect that the checks were being tendered in full satisfaction of Hector's claims; similarly, the record is devoid of any evidence that Baeza accompanied the checks with a written communication of any kind that could have fulfilled this statutory requirement.

Second, subsection (d) of the Code provides that a debt may be discharged by the tendering of a negotiable instrument "if the person against whom the claim is asserted proves that within a reasonable time before collection of the instrument was initiated, the claimant, or an agent of the claimant having direct responsibility with respect to the disputed obligation, knew that the instrument was tendered in full satisfaction of the claim." Once again, we conclude that Baeza failed to present any evidence to support a finding that Hector Garcia or anyone at Hector's was aware that Baeza was tendering the checks in "full satisfaction of the claim." As set forth above, when Baeza tendered its two checks, he admittedly failed to alert Hector Garcia, either in writing or orally, that he considered the checks to be in full satisfaction of Hector's claim. Further, Hector Garcia testified that when he received Baeza's checks, he did not consider them to be in full satisfaction of his claims, and there is simply no evidence in the record to suggest that Hector Garcia accepted and cashed the checks with the knowledge that they were meant to be in satisfaction of his claim.

14

Accordingly, we conclude that the evidence does not establish statutory accord and satisfaction as a matter of law and that the trial court's implied finding that Baeza failed to meet its burden to establish the statutory defense of accord and satisfaction is not against the great weight and preponderance of the evidence. Issue One is overruled.

**THE TRIAL COURT'S AWARD OF DAMAGES**

In his second claim of error, Baeza challenges the award to Hector's of damages in the amount of $9,900.25, contending that the evidence is both legally and factually insufficient to support that award. Baeza asks this Court to either reverse and render judgment, or in the alternative, to remand the case to the trial court to reconsider the amount of damages to be awarded.

*Standard of Review*

The universal rule for measuring damages for breach of contract is just compensation for the loss or damage actually sustained. *Davis v. Chaparro,* 431 S.W.3d 717, 726 (Tex.App. – El Paso 2014, pet. denied) (citing *Dakil v. Lege,* 408 S.W.3d 9, 12 (Tex.App. – El Paso 2012, no pet.)); *see also Abraxas Petroleum Corp. v. Hornburg,* 20 S.W.3d 741, 760 (Tex.App. – El Paso 2000, no pet.). A non-breaching party is generally entitled to all actual damages necessary to put him in the same economic position he would have been had the contract not been breached. This is commonly referred to as the benefit of the bargain. *Davis,* 431 S.W.3d at 726 (citing *Bowen v. Robinson,* 227 S.W.3d 86, 96 (Tex.App. – Houston [1st Dist.] 2006, pet. denied)). Under the implementation of this rule, a party should not receive less or more than the actual damages he incurred. *Id.* (citing *Abraxas Petroleum Corp.,* 20 S.W.3d at 760).

We review challenges to the amount of a damages award by the same standard as any other

15

challenge to a court's finding. *Dakil,* 408 S.W.3d at 12-13. Therefore, we will review the trial court's judgment under a legal sufficiency or "no evidence" standard, as well as under a factual sufficiency standard. The finding as to damages should be sustained if there is some probative evidence to support it and provided it is not against the great weight and preponderance of the evidence. *Id.* at 12 (citing *Carrasco v. Goatcher,* 623 S.W.2d 769, 772 (Tex.App. – El Paso 1981, no writ)).

*The Evidence of Damages*

Baeza makes three challenges to the trial court's award of damages: (1) the trial court did not credit a payment of $596.62 that Baeza allegedly made to Hector's in July 2011; (2) the trial court failed to take into consideration the 5 percent commission owed to Baeza when calculating its award; and (3) the trial court failed to "match the disputed invoices" submitted at trial.

Baeza's argument that the trial court failed to credit a payment of $596.62 in calculating the damages award is the easiest to resolve. The undisputed evidence at trial revealed that Hector's never actually received a check in this amount. Hector Garcia testified that he never received this payment, and more importantly, Baeza's own office manager testified that she had no record that the check she reportedly wrote for $596.62 cleared the bank. As such, we conclude that there was no basis for the trial court to have considered this payment in making its determination of the proper award of damages.

We find it more troubling to resolve the questions whether in making its determination that Hector's was entitled to $9,900.25 in damages, the trial court properly took into consideration the 5 percent commission owed to Baeza and the invoices submitted in evidence.

In its initial pleading, Hector's requested $9,900.25 in damages based on the balance it

16

believed was owed, as set forth in its sworn accounting, and the trial court awarded damages to Hector's in that exact amount. Although Baeza presented conflicting evidence in an attempt to establish that he did not owe anything to Hector's, the trial court was allowed to rely on Hector's sworn account, the invoices Hector's submitted at trial, and Hector Garcia's testimony at trial in calculating the damages award. Even Baeza's own attorney recognized during closing argument that the parties' dispute over the amount owed came down to "one company's word against another." Accordingly, if we did not believe there were other discrepancies in the trial court's calculation of damages, our inquiry would stop here, and we would be compelled to uphold the trial court's judgment.

The first discrepancy we see in the record is the fact that Hector Garcia acknowledged at trial that he failed to take into consideration the parties' agreed upon 5 percent commission when he initially calculated that Baeza owed him $9,900.25, as requested in his petition. If this were the only mathematical error in this case, we would be compelled to agree with Baeza that the trial court erred by failing to deduct 5 percent from the amount of damages owed to Hector's; it would then be a relatively easy task to reform the judgment to deduct for that amount, and to render judgment in the correct amount.

In its brief, however, Hector's argues that even if the trial court failed to deduct the 5 percent commission from the $9,900.25 amount that Hector's initially requested, this failure is of no consequence, because Hector's revised its damages calculations midway through trial and allegedly the evidence presented at trial actually supported a greater award of $14,558.45.[5] If Hector's revised damages calculation was mathematically sound, we would be compelled to agree

---

[5] We note that Hector's failed to request a trial amendment seeking this additional amount of damages, and instead advised the trial court that it would be satisfied with an award of $9,900.25 as requested in its petition.

that the trial court had more than sufficient evidence to support an award of the lesser amount of $9,900.25. We note, however, that Hector Garcia and his attorney appear to have made a fundamental error when they recalculated the damages amount.

We note that this recalculation occurred after the trial expressed concern that it was not entirely clear how Hector's had arrived at the $9,900.25 amount it claimed was owed. In particular, although Hector's sworn account contained a column purporting to list the amount of each invoice that Hector's had allegedly sent to Baeza, the sworn account did not include a total for that column. Similarly, although the sworn account contained a column listing each of the payments Hector's had allegedly received from Baeza, it failed to include any total for that amount. The trial court therefore suggested that it would be beneficial to "look at the total amounts that were claimed through the course of the parties' dealing and see what five percent of that number is compared to the claimed arrearages[.]"

After a recess during the trial, Hector Garcia testified that he and his attorney had reviewed the numbers set forth in the sworn account and concluded that they had originally made a mathematical error when they first calculated that Baeza owed Hector's $9,900.25. In particular, Hector Garcia testified that he and his attorney had added up the charges to Baeza that were set forth in his sworn account, and arrived at a total amount of $60,587.17. Hector Garcia then testified that, after deducting for the 5 percent commission owed to Baeza, he believed that the total amount of allowable charges to Baeza was $57,557.81. Rather than rely on his own figures in his sworn account to calculate the total amount of money that Baeza had paid him, however, Hector Garcia instead referred to an exhibit that Baeza had presented at trial, which listed 13 cancelled checks that Baeza had allegedly written to Hector's from July 2010 through July 2011,

18

totaling $42,998.26.[6]   Hector Garcia stated that he had then subtracted that amount from the $57,557.81 in allowable charges when he concluded that Baeza owed him more than the original $9,900.25 that he had requested in his petition.   Although Hector Garcia did not testify as to the revised amount he believed Baeza owed him, Hector's attorney asserted, both in his closing argument at trial and in his brief on appeal, that he used these same figures to calculate that Baeza owed Hector's a total of $14,558.45.

If this calculation were correct, once again, our analysis would end, as this would have provided a sufficient basis for upholding the court's award of the lesser amount of $9,900.25 as originally requested by Hector's in his petition.   However, our review of the evidence, including the invoices and sworn account submitted by Hector's at trial, reveals that when Hector Garcia and his attorney recalculated the total charges to Baeza for work performed under the 2010 contract, they mistakenly included $8,279.28 in charges that Hector's had submitted to Baeza for unrelated work performed in 2006 and 2007.   Hector's own records reflect that Baeza paid all of these earlier charges prior to the time the parties entered into their contract in 2010.   In its recalculation, however, Hector Garcia and his attorney failed to deduct Baeza's payments for the 2006 and 2007 work performed, and instead only deducted Baeza's payments for the 2010 work performed.

Our review of both the invoices and the sworn account reveals that Hector's presented evidence of charges to Baeza totaling $52,307.89 for the 2010 work performed under the terms of the parties' contract.   When that amount is discounted by the 5 percent agreed-upon commission ($2,615.39), this leaves a total of $49,692.50 in allowable charges for the 2010 work performed. The next step in the equation would be to subtract the amounts that Baeza paid to Hector's for the work Hector's performed in 2010.

---

[6]  At trial, Hector Garcia mistakenly testified that Defendant's Exhibit 1 showed a total of $42,999.36 in payments.

19

The trial court was presented with three different figures at trial regarding the amounts that Baeza allegedly paid to Hector's under the terms of the parties' 2010 contract. First, Hector Garcia initially testified at trial that he believed Baeza had paid him a total of $40,447.19, but presented no evidence to support that belief. Using that figure, the amount owed to Hector's would be $9,245.31. Second, by our calculation, Hector's own sworn account listed payments received from Baeza in the total amount of $42,407.64. Using that figure, the amount owed to Hector's would be $7,284.86. Third, as set forth above, Baeza presented an exhibit at trial, which included a list of 13 cancelled checks that Baeza allegedly wrote to Hector's in 2010 and 2011, totaling $42,998.26.[7] Using that figure, the amount owed would be $6,694.24.

All three of these scenarios leave a balance owed that is less than the $9,900.25 judgment awarded by the trial court, and we therefore conclude that the evidence presented at trial, even when viewed in the light most favorable to the trial court's judgment, was both factually and legally insufficient to support the trial court's judgment in the amount of $9,900.25.

Nevertheless, while there is insufficient evidence to support the entire amount of the trial court's award, there is sufficient evidence to demonstrate that Hector's suffered *some* amount of damages as the result of Baeza's breach of contract. However, because we cannot discern the correct amount of those damages given the conflict in the evidence, we are unable to render

---

[7] Although Hector's and its attorney indicated during trial that they were relying on this figure in revising their calculations of damages owed, we do not believe that their statements amount to either a judicial admission or a quasi-admission that would preclude Hector's from asserting that Baeza paid it a different amount. Hector Garcia never expressly testified that he was embracing Baeza's calculations as being true; instead his attorney asked him leading questions during trial that led him down the path of relying on this exhibit in making his (mathematically incorrect) argument that Baeza actually owed Hector's over $14,000. As Hector Garcia's testimony did not amount to a "deliberate, clear, and unequivocal" adoption of the figures set forth in Baeza's exhibit, we cannot conclude that his testimony on this point would be binding on Hector's. *See Mendoza v. Fid. & Guar. Ins. Underwriters, Inc.*, 606 S.W.2d 692, 694 (Tex. 1980) (quasi-admissions must be "deliberate, clear, and unequivocal"); *see also Duncan v. F-Star Mgmt., L.L.C.*, 281 S.W.3d 474, 481 (Tex.App. – El Paso 2008, pet. denied); *Phillips v. Phillips*, 296 S.W.3d 656, 668 (Tex.App. – El Paso 2009, pet. denied).

judgment in favor of Hector's in a lesser dollar amount. We therefore reverse the judgment of the trial court and remand the cause for a new trial on the issue of the amount of damages to be awarded to Hector's.[8] *See, e.g., Formosa Plastics Corp. USA v. Presidio Engineers & Contractors, Inc.*, 960 S.W.2d 41, 51 (Tex. 1998) (reversing and remanding case to the trial court for a new trial where there was "no legally sufficient evidence to support the entire amount of damages, but there [was] some evidence of the correct measure of damages"); *see also Long v. Griffin,* 442 S.W.3d 253, 256 (Tex. 2014) (because the evidence was legally insufficient to support the amount of the trial court's attorney's fee award, the Court remanded the case to allow the trial court to redetermine the amount of the award).

*The Possibility of a Remittitur*

As an alternative to a new trial, we believe it is appropriate to suggest a remitter to Hector's pursuant to TEX.R.APP.P. 46.3. Rule 46.3 permits this Court to suggest a remittitur when an "appellant complains there is insufficient evidence to support an award and the court of appeals agrees, but concludes there is sufficient evidence to support a lesser award." *Samuels v. Nasir*, 445 S.W.3d 886, 894 (Tex.App. – El Paso 2014, no pet.); *see also Corral-Lerma v. Border Demolition & Envtl. Inc.,* __S.W.3d__, 2015 WL 2265082, at *11 (Tex.App. – El Paso May 13,

---

[8] We note that TEX.R.APP.P. 44.1(b) allows this Court to order a new trial on a limited issue if the trial court committed an error that "affects part of, but not all, the matter in controversy and that part is separable without unfairness to the parties"; however, the Rule does not allow us to "order a separate trial solely on unliquidated damages if liability is contested." In the present case, although Baeza contested liability, we conclude that a new trial on the limited issue of damages is nevertheless appropriate; in particular, we conclude that the damages requested by Hector's were liquidated in nature, as they were based on Hector's sworn account and were documented by the written invoices that Hector's attached to its petition. *See, e.g., Woodhaven Partners, Ltd. v. Shamoun & Norman, L.L.P.,* 422 S.W.3d 821, 845-46 (Tex.App. – Dallas 2014, no pet.) (a claim is liquidated if the amount of damages may be accurately calculated by the trial court from the factual, as opposed to the conclusory, allegations in plaintiff's petition and the instrument in writing); *Novosad v. Cunningham,* 38 S.W.3d 767, 773 (Tex.App. – Houston [14th Dist.] 2001, no pet.) (suit to recover amount due for professional services was a liquidated claim proven by written invoices attached to original petition); *Mantis v. Resz,* 5 S.W.3d 388, 392 (Tex.App. – Fort Worth 1999, pet. denied) (in a suit on a sworn account, the petition with an attached sworn account and verified affidavit of the account was a liquidated claim proved by written instruments).

21

2015, no pet. h.). As set forth by the Texas Supreme Court in *Larson v. Cactus Util. Co.,* 730 S.W.2d 640, 641 (Tex. 1987), if part of a damage verdict lacks sufficient evidentiary support, the proper course is to suggest a remittitur of that part of the verdict, giving the party prevailing in the trial court the option of accepting the remittitur or having the case remanded for a new trial. *Id.*

Although we believe the amount of the trial court's award of damages was not supported by the evidence presented at trial, we nevertheless conclude there is sufficient evidence in the record to support a lesser award. We therefore believe it is appropriate to offer Hector's a choice of accepting a remittitur if it believes that a new trial on damages is not the most expeditious way to resolve the mathematical discrepancies in the record.

In determining the proper amount of a suggested remittitur in this instance, we must determine the maximum possible award that is supported by the evidence and subtract that amount from the damages award actually entered by the trial court. The calculation of damages in this case turns primarily on what figure is used to calculate the amount of payments that Baeza made to Hector's under the terms of the parties' 2010 contract. During trial, the parties submitted evidence of three different dollar amounts that Baeza allegedly paid to Hector's under the terms of their contract: $40,447.19; $42,407.64; and $42,998.26. However, we believe that the first dollar figure of $40,447.19 was not supported by factually sufficient evidence; although Hector Garcia testified during trial that Baeza had only paid him this amount, his testimony was not supported by any documentary evidence, and in fact, the documentary evidence that he supplied at trial, including the sworn account and attached invoices, actually indicated that Baeza had paid Hector's almost $2,000 more than that amount. As such, we decline to use that figure in calculating the maximum possible damages award that could have been made to Hector's.

22

Instead, we conclude that the evidence presented to the trial court only supported an award of damages in the following two amounts: (1) $7,284.86, using the payment figure of $42,407.64, as set forth in Hector's sworn account and attached invoices; and (2) $6,694.25, using the payment figures of $42,998.26, as set forth in Baeza's trial exhibit. As $7,284.86 is the maximum damages award supportable by the evidence presented at trial, we conclude that the appropriate amount of a suggested remittitur would be $2,615.39 – the difference between the trial court's award of $9,900.25 and the maximum award supportable by the evidence. If within 15 days of this opinion's issuance, Hector's accepts this suggested remittitur of $2,615.39, we will reform the trial court's judgment and affirm as modified. If not, the judgment of the trial court will be reversed and this cause will be remanded for a new trial on the limited issue of the proper amount of damages to be awarded to Hector's.

## CONCLUSION

Because we conclude that there was insufficient evidence to support the amount of the trial court's award of damages, we reverse the trial court's judgment, and order a new trial on the issue of the proper amount of damages to be awarded to Hector's. If, however, Hector's timely files a remittitur of $2,615.39 within 15 days of the issuance of this opinion, the judgment will be reformed to reflect a damages award of $7,284.86, and affirmed in all other respects.


STEVEN L. HUGHES, Justice

July 31, 2015

Before McClure, C.J., Rodriguez, and Hughes, JJ.

23