COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



|  |  |  |
|---|---|---|
| CYNTHIA DARLENE HALDERMAN and SHERRY JEAN LACINA, | § § | No. 08-24-00070-CV |
| Appellants, | § | Appeal from the |
| v. | § | 87th Judicial District Court |
|  |  | of Leon County, Texas |
| BOBBIE J. IVY, Independent Executrix of the Estate of J.D. BOYD, | § | (TC# 21-0255CV) |
|  | § |  |
| Appellee. | § |  |
|  | § |  |

## MEMORANDUM OPINION[1]

Cynthia Darlene Halderman and Sherry Jean Lacina (collectively, the Plaintiffs) filed a notice of appeal from a final judgment in which the trial court denied their request for a declaratory judgment that they were entitled to possession and ownership of a John Deere 5403 tractor, loader, and hay spear. The trial court found that the Plaintiffs did not prove by a preponderance of the evidence that the tractor, loader, and hay spear were located on a 66.977-acre tract of land in Freestone County, Texas at the time of J.D. Boyd's death. We affirm the trial court's judgment denying the request for declaratory relief.

---

[1] The appeal was transferred to this Court from the Tenth Court of Appeals pursuant to a Texas Supreme Court docket equalization order. Accordingly, we apply the Tenth Court of Appeals' precedent to the extent it conflicts with our own. *See* Tex. R. App. P. 41.3.

# I. FACTUAL BACKGROUND

Mr. Boyd died on December 23, 2020. On April 22, 2021, his last will and testament was admitted to probate, and Bobbie J. Ivy—his long-term companion—was appointed independent executor. The will identified Mr. Boyd's two daughters (the Plaintiffs) as well as Ms. Ivy. Relevant to this appeal, Mr. Boyd's will stated as follows:

> (A) I give, devise and bequeath my 3.08 acres located at 4513 Cedar Creek in Buffalo, Texas, including the mobile home located thereon and all of the contents therein, and all my personal property including any vehicles located thereon to my companion, BOBBIE J. IVY.
>
> .    .    .
>
> (C) I give, devise and bequeath my 66.977 acres located on FM 1848 in Freestone County, Texas, *including all* livestock and *farm equipment located thereon* to my two children . . . in equal shares; provided, however, if either [of the children] shall predecease me, then her share shall be distributed to the survivor of the two, per capita (emphasis added).

An inventory of the estate, which was approved by the court, listed only a single vehicle: a 2009 Chevrolet Silverado extended cab pickup truck. The Plaintiffs later filed a petition asking for a declaratory judgment that the truck, tractor, loader, and hay spear were farm equipment located on the farm[2] at the time of Mr. Boyd's death.

On October 20, 2023, the trial court conducted a bench trial at which six witnesses testified. At trial, there was no dispute that Mr. Boyd possessed the truck, tractor, loader, and hay spear. The dispute centered on the location of the tractor, loader, and hay spear on the day he died.

Brenton Lathrop testified that he lived across the street and about two houses down from Mr. Boyd's house and he drove by once or twice a week since about 2006 or 2007. In that time,

---

[2] We refer to the 66.977 acres located on FM 1848 in Freestone County as the "farm," and the 3.08 acre-property located at 4513 Cedar Creek in Buffalo, Texas as the "house."

he never saw a John Deere tractor. He said that if there had been a tractor on the property, he would have seen it.

During Ms. Lacina's testimony, Mr. Boyd's will and the order probating the will were offered and admitted in evidence. Plaintiffs' counsel also offered in evidence the transcript of a March 9, 2023 hearing on a motion to compel, asserting that comments made by Ms. Ivy's attorney during that hearing amounted to judicial admissions. He did not specify the statements he believed were judicial admissions. Ms. Ivy's attorney objected that his comments were merely arguments of counsel. The trial court stated, "I'm going to admit it for now, just for -- it's just a record of what happened. I'm not going to make any ruling on whether -- its admission [sic] or not, I mean, at this time anyway." Ms. Ivy's attorney did not pursue a ruling on his objection to admitting the transcript into evidence or on his objection that his comments were not judicial admissions.

Ms. Lacina was then asked about the truck and tractor, which she said her father owned at the time of his death. She said he rode the truck from his house to his farm. She stated the loader and hay spear were interchangeable and could be attached to the tractor, and were kept in the pasture on the farm. Ms. Lacina lived five hours from her father and visited him a few times a year, but she could not remember how many times she may have seen him in 2019 or 2020.

Ms. Ivy testified that she and Mr. Boyd had been together for over 20 years and were in a common-law marriage. She said she was the one who found him at the farm unresponsive "on the ground between the truck and the feed stall," and she called her sister who, in turn, called 911. Ms. Ivy said that about six months before his death, Mr. Boyd started to sell his livestock because his health "wasn't good," and he kept the tractor at their house for most of the year, and not on the farm. Ms. Ivy stated that Mr. Boyd used the tractor at the house on the fall and summer gardens, and he used it for mowing and cleaning up fallen trees around the house. She testified that when

3

Mr. Boyd died, the tractor was at the house. She also said that "from time to time," he used the tractor at the farm for mowing. Mr. Boyd would drive the tractor to and from the farm, while Ms. Ivy would follow in the truck "behind him with [her] flashers." According to Ms. Ivy, she and Mr. Boyd saw Ms. Halderman once the year he died, but they had not seen Ms. Lacina in two years.

Freestone County Sheriff's Deputy Scott Leatherman testified that he responded to the 911 call. He said he did not recall seeing a tractor at the scene in the field, but he admitted he confined himself to the area where Mr. Boyd's body was found. Although he had been subpoenaed to bring a video he made of the incident, he said he did not do so because he did not have access to the video.

Jeffrey Rodell, Ms. Ivy's brother-in-law, testified that he was not related to Mr. Boyd, but all his life, he had known Mr. Boyd. Mr. Rodell's wife told him that Mr. Boyd died, whereupon he went to the farm. Ms. Ivy was there, and Mr. Boyd was "laying [sic] dead on the ground." He said that a few days or maybe a week or two after Mr. Boyd died, Ms. Ivy asked him to get the tractor, which was at the house, and move it to his house about 15 miles away. He did not know the tractor's location before it was at the house.

The last witness to testify, Ms. Halderman, said that the last time she was at her father's house before he died was in October 2020, and the tractor was not at the house when she visited. She said the tractor had a hay spear, which was used to move the heavy hay bales to feed her father's cattle. Ms. Halderman said she saw the video taken by Deputy Leatherman because she obtained it through "open records," and "a yellow wheel [could be seen] underneath the shed" where he always parked the tractor. According to her, all John Deere tractors have yellow wheels. The video was not introduced into evidence or otherwise played at trial.

4

At the conclusion of testimony, Ms. Ivy's attorney argued the tractor was not located on the farm at the time of Mr. Boyd's death and it would be considered personal property located at the house. He further contended there was no definitive evidence the tractor was located on the farm. Plaintiffs' attorney argued that a preponderance of the evidence showed the truck and tractor were on the farm and were farm equipment. The parties also briefly returned to their arguments about whether statements made by Ms. Ivy's attorney at a prior hearing were judicial admissions. Ms. Ivy's counsel explained, "I can't make a judicial admission and argument. Usually that's done through a pleading or through a party, and obviously, I'm not a party to this suit."

After hearing arguments, the trial court ruled from the bench denying the Plaintiffs' requested declaratory relief and finding that the truck was not farm equipment and the tractor was not located on the farm on the day Mr. Boyd died. On February 16, 2024, the trial court signed the final judgment and, a month later, signed findings of fact and conclusions of law.

Although both sisters filed a notice of appeal, only Ms. Halderman presented argument; Ms. Lacina did not file an appellant's brief. On appeal, Ms. Halderman challenges the trial court's finding that:

> Testimony and evidence received and admitted, did not prove by a preponderance of the evidence that the John Deere 5403 Tractor, loader and hay spear were located on a tract of land described as 66.977 acres, situated in the Francis O'Neal Survey, A-727, Freestone County, Texas at the time of J.D. Boyd's passing.

Ms. Halderman does not challenge the trial court's determination that the truck was not farm equipment.

## II.  STANDARD OF REVIEW

In an appeal from a bench trial, the trial court's findings of fact carry the same weight and are reviewed on appeal in the same manner as we review a jury verdict. *Texas Outfitters Ltd., LLC v. Nicholson*, 572 S.W.3d 647, 653 (Tex. 2019). When the appellate record contains a reporter's

5

record, as it does in this case, findings of fact are not conclusive and are binding only if supported by the evidence. *Sheetz v. Slaughter*, 503 S.W.3d 495, 502 (Tex. App.—Dallas 2016, no pet.). We review a trial court's findings of fact for factual sufficiency. *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994); *Texas Outfitters*, 572 S.W.3d at 653.

When, as here, a party attacks the factual sufficiency of an adverse finding on an issue on which she has the burden of proof, that party must show that the adverse finding is against the great weight and preponderance of the evidence. *Lonis v. Walton*, No. 10-22-00352-CV, 2023 WL 6157344, at *4 (Tex. App.—Waco Sept. 21, 2023, no pet.) (mem. op.); *Baeza v. Hector's Tire & Wrecker Serv., Inc.*, 471 S.W.3d 585, 591 (Tex. App.—El Paso 2015, no pet.). We will set aside the finding only if, after considering and weighing all the pertinent record evidence, we determine that the credible evidence supporting the finding is so weak, or so contrary to the overwhelming weight of all the evidence, that the finding should be set aside and a new trial ordered. *Lonis*, 2023 WL 6157344, at *4. We may not substitute our judgment for that of the fact-finder, even if we would have reached a different conclusion when reviewing the evidence. *Baeza*, 471 S.W.3d at 591. We defer to the fact-finder's determination of both the credibility of the witnesses and the weight of their testimony. *Kiehne v. Jones*, 247 S.W.3d 259, 263 (Tex. App.—El Paso 2007, pet. denied).

## III. ANALYSIS

In her challenge to the factual sufficiency of the evidence in support of the finding, Ms. Halderman does not point to the evidence adduced during the bench trial. Instead, on appeal, she relies exclusively on the statements made by Ms. Ivy's attorney during the March 9, 2023 hearing on a motion seeking to compel Ms. Ivy's response to Plaintiffs' Interrogatory Number 1, which asked:

Please state each location of the John Deere 403 tractor, identification number PY5403U002130, loader and hay spear owned by J. D. Boyd during the period beginning thirty (30) days before the date of death of J. D. Boyd and thirty (30) days after the date of death of J. D. Boyd, please state the identity and location of all persons having knowledge of facts relevant thereto and identify all documents relevant thereto.

During the March 9th hearing, Ms. Ivy's attorney said Ms. Ivy could not account for the tractor's location every single day as requested in the interrogatory. He argued the only relevant date of the tractor's location was the date of Mr. Boyd's death:

[Counsel]: There's a police officer that found it on the date of death. That's where it was on the date of death. I mean wherever it was on the date of death is where it was.

. . . .

[The Court]: So -- you're saying there's a police report that shows where it was that day?

[Counsel]: Yes. There was a police report --

[The Court]: So everybody knows -- where it was the date of death?

[Counsel]: Yeah. The police -- found him on the frigging tractor dead.

During the bench trial, Plaintiffs' counsel argued the above statements should be admitted as a judicial admission. On appeal, Ms. Halderman asserts the statements were judicial admissions because they were made by Ms. Ivy's attorney on her behalf during a judicial proceeding.

A true judicial admission is a formal waiver of proof typically found in pleadings or the parties' stipulations. *Villarreal v. Guerra*, 446 S.W.3d 404, 412 (Tex. App.—San Antonio 2014, pet. denied); *Weslaco Fed'n of Teachers v. Texas Educ. Agency*, 27 S.W.3d 258, 263 (Tex. App.—Austin 2000, no pet.). "Because a judicial admission is a waiver of proof, we must apply the judicial admission doctrine with caution." *In re M.M.O.*, 981 S.W.2d 72, 84–85 (Tex. App.—San Antonio 1998, no pet.).

"The source of a judicial admission may be facts alleged in a pleading, an agreed upon statement of fact, a stipulation, or a formal declaration made in open court by a party or counsel.

7

As long as the source of the admission remains unretracted it must be taken as true . . . [.]" *Smith v. Altman*, 26 S.W.3d 705, 709 (Tex. App.—Waco 2000, pet. dism'd w.o.j.) (internal citation omitted). "However[,] a party relying on a judicial admission '. . . must protect the record by objecting to the introduction of controverting evidence and to the submission of any issue bearing on the facts admitted.'" *Id.* (quoting *Marsall v. Vise*, 767 S.W.2d 699, 700 (Tex. 1989) (orig. proceeding)). Here, Ms. Halderman cannot maintain that Ms. Ivy's attorney's statements were a judicial admission that the tractor was on the farm on the day Mr. Boyd died, when evidence contrary to the purported admission was heard without objection. *See id.*; *Starks v. City of Houston*, 448 S.W.2d 698, 700 (Tex. App.—Houston [1st Dist.] 1969, writ ref'd n.r.e.) ("even if counsel's statement had amounted to a judicial admission, it was waived when evidence to the contrary was heard").

Ms. Halderman did not object to testimony that the tractor was not on the farm the day Mr. Boyd died; therefore, the trial court was left with conflicting evidence. Deputy Leatherman testified that while he confined himself to where Mr. Boyd's body was found on the farm, he did not recall seeing a tractor. Ms. Ivy testified that the tractor was at the house when Mr. Boyd died. Mr. Rodell testified that sometime after Mr. Boyd died, Ms. Ivy asked him to get the tractor, which was at her house, and move it to his house.

On the other hand, Mr. Lathrop testified that he drove by Mr. Boyd's house once or twice a week and he never saw a John Deere tractor on the property. Ms. Halderman testified she obtained the video taken by Deputy Leatherman and "a yellow wheel" could be seen in the video. However, neither the video nor any screenshots from the video showing "a yellow wheel" were admitted in evidence.

8

After considering and weighing all the pertinent record evidence, we determine that the credible evidence supporting the finding was not so weak or so contrary to the overwhelming weight of the evidence that the finding should be set aside and a new trial ordered. *See Lonis*, 2023 WL 6157344, at *4. Furthermore, we defer to the fact-finder's credibility determinations and we may not substitute our judgment for that of the fact-finder, even if we would have reached a different conclusion. *See Baeza*, 471 S.W.3d at 591; *Kiehne*, 247 S.W.3d at 263.

## IV. CONCLUSION

Ms. Halderman did not show that the trial court's finding was against the great weight and preponderance of the evidence. Therefore, we affirm the trial court's judgment denying the request for declaratory relief.

LISA J. SOTO, Justice

October 31, 2024

Before Alley, C.J., Palafox and Soto, JJ.