YVONNE T. RODRIGUEZ, Justice
Appellant, Sanders Oil & Gas, Ltd., ("Sanders Oil") appeals the trial court's ruling of a claim for services by Appellee, Big Lake Kay Construction, Inc., ("Big Lake") against them. At the conclusion of a bench trial, the trial court entered a judgment against Sanders Oil for $25,614.61 and awarded attorney fees of $7,200.00. In three issues Sanders Oil asserts: (1) Big Lake failed to satisfy a condition precedent to a contract; (2) the award of $25,614.61 was legally and factually insufficient; and (3) a spoliation presumption should have been applied. We affirm.
BACKGROUND
Big Lake provided oil-field services to Sanders Oil. Joey Hernandez (Hernandez) owns Big Lake and Gail Lynn Sanders ("Sanders") owns Sanders Oil. Big Lake and Sanders Oil orally agreed Big Lake would provide oil-field services to Sanders Oil and, in return, Sanders Oil would pay for the services rendered after receiving the appropriate invoices. Big Lake generated invoices totaling approximately $80,000 for the entirety of the work performed for Sanders Oil. Big Lake's lawsuit pertains to a portion of those invoices that were unpaid.
Big Lake sued Sanders, alleging a breach of oral contract, based on Sanders Oil's failure to pay Big Lake $39,355.88 for goods and services. In response, Sanders Oil asserted a variety of affirmative defenses-among them-alleging Big Lake did not own the breach of contract claim because Big Lake had sold the claim to Security Business Capital, LLC ("SBC").
SBC is a factoring company.[1] During a financially difficult period, Big Lake sold their Sanders Oil invoices (i.e. factored) to SBC. On October 2, 2009, SBC sent Sanders Oil a Notice of Assignment signed by both Justin Keith Ryan, a then-manager of SBC, and Kenneth Stahl, Sanders Oil's then-comptroller. Under the agreement, Sanders Oil was to pay SBC, not Big Lake, for the outstanding invoices. After Sanders Oil ceased paying, Big Lake sued on the outstanding balance.
Joey Hernandez
During the bench trial, Hernandez, the owner of Big Lake, described how their invoices were generated. First, a Big Lake employee (or supervisor) would perform the work and at the end of the work day, the employee would return to the office and enter their field notes. The invoices would issue once the field notes were entered, which Hernandez subsequently reviewed. Hernandez confirmed that as a result of Big Lake's process, each invoice *86 corresponded to a particular day and it was not possible to produce an invoice without the corresponding field notes. Indeed, he explained, without the relevant field notes, Big Lake would be unable to produce an invoice number. At trial, Sanders Oil's counsel, thoroughly cross-examined Hernandez regarding Big Lake's invoices and their diligence in adhering to their invoice process.
Hernandez testified, Big Lake began performing services for Sanders Oil after he had spoken to a contractor by the name of "Wayne" and Joe Johnson, a Sanders Oil representative. After the initial project, Big Lake continued to provide Sanders Oil with additional services: first, by allowing Sanders Oil to utilize Big Lake's employees and equipment, and later, by purchasing supplies and materials to service Sanders Oil. Big Lake built multiple "tanks" for Sanders Oil. Big Lake continued to work for Sanders Oil until they ceased paying on their outstanding invoices. Hernandez contacted Sanders about the outstanding invoices. Sanders explained that Sanders Oil was facing some financial pressure, but assured Hernandez he would receive payment in full. As a result, Big Lake recommenced performance of their services to Sanders Oil.
Big Lake soon found itself facing financial difficulties and Hernandez engaged SBC's factoring assistance: he sold the Sanders Oil invoices to SBC. In factoring these invoices, Big Lake lost an increasing percentage of each invoice over time while the invoices remained unpaid. Big Lake sold approximately sixty-nine invoices to SBC, with an approximate value of $37,000. Hernandez then informed Sanders he had factored those invoices and Sanders Oil needed to pay SBC direct. Hernandez kept in contact with SBC manager Justin Keith Ryan to check the status of Sanders Oil's payments until they ceased payment. Due to Sanders Oil's non-payment, Hernandez repurchased the outstanding invoices from SBC by borrowing from a bank and utilizing his own personal funds.
Hernandez testified that Big Lake initially factored (i.e. sold) $29,394.73 of the Sanders Oil invoices. After factoring a second set of Sanders Oil invoices, the outstanding total increased to $34,497.65. Hernandez also used Big Lake's cash on hand to repurchase the Sanders Oil invoices from SBC and Big Lake was, subsequently, sued for non-payment to another company. As a result, Hernandez testified Big Lake incurred approximately $2,000 to $2,400 in attorney's fees as a result of that lawsuit. Hernandez stated from the time Sanders Oil ceased payment up until trial, the amount owed varied. Nevertheless, Hernandez averred the total amount of the invoices, paid and unpaid, came from three or four "tanks" Big Lake had built for Sanders Oil. Hernandez testified to the amount Sanders Oil owed Big Lake, before and after factoring the invoices, and, in addition, the amounts owed before and after this suit commenced. Some of the outstanding invoices lacked the accompanying field notes, Hernandez explained, because Big Lake's office had moved. Previously, Hernandez operated Big Lake from his home, however, they were lost when he moved Big Lake to a new office location. Nevertheless, Hernandez produced the invoices he was able to locate and produced all of the relevant invoices in question.
At trial, Hernandez reviewed and confirmed the letter SBC sent Sanders Oil. The letter stated, in relevant part:
[Big Lake] has assigned their present and future accounts receivables to [SBC].
...
All payments should be made payable and mailed to [SBC] at [SBC's address].
*87 ...
This Notice of Assignment shall remain in effect until you receive written authorization from [SBC].
The letter was signed by Ryan, for SBC, and by Kenneth Stahl, for Sanders Oil.
Joe Johnson
Joe Johnson works in the oil industry and was employed by Sanders Oil to supervise companies, including Big Lake, that were working on Sanders Oil's wells. He explained that after having built four or five wells, he employed Big Lake for Sanders Oil's to continue work on the wells, which required various types of skills and equipment. In addition to the well-related work, according to Johnson, Big Lake are also responsible for performing non-well-related work. Johnson supervised Big Lake and kept Sanders Oil appraised of Big Lake's work and progress.
Johnson confirmed Hernandez's testimony regarding how the invoices were generated, but added that he reviewed the field notes for each of the invoices. Each invoice has to be the product of a corresponding set of field notes: it was his job to make sure they "match[ed] up." Johnson testified he did not approve an invoice without reviewing the corresponding field notes. Johnson averred each of the disputed invoices involved necessary work that had been completed by Big Lake. In addition, Johnson stated that he did not recall any instance in which he found an issue with the invoices from Big Lake. He explained the work Big Lake performed on the wells "[was all] very expensive" and the hours worked and the amounts were "right in the groove ...." However, Johnson was unaware as to the number of total invoices that were in dispute, did not recall the number of invoices he reviewed during the time Big Lake performed the work for Sanders Oil, or the number of total invoices Sanders Oil received. Johnson eventually left Sanders Oil because of the economic difficulties and embarrassment that came from working for Sanders Oil.
Justin Keith Ryan
Justin Ryan, at trial, was SBC's then-current credit manager, but was a manager when SBC was attempting to collect on the Sanders Oil invoices. Ryan explained that he knew Big Lake factored with one other company in addition to SBC. Ryan testified as to what SBC charged Big Lake for their factoring services in addition to the percentages Big Lake received per factored invoice. He verified the SBC letter sent to Sanders Oil which required SBC to give Sanders Oil notice when payments were no longer owed to SBC. According to Ryan, Sanders Oil understood Big Lake payments were to be sent to SBC and Sanders Oil sent payments for Big Lake invoices to SBC. Ryan emphasized the importance to SBC of removing the party that factors (Big Lake) from the payment stream, and alerting the invoiced party (Sanders Oil) to make payment directly to the factoring company (SBC) to reduce the possibility of a double payment.
Ryan expounded on a "Collection Report" produced at trial, detailing each of the factored invoices, their corresponding amounts, annotations from SBC describing each invoice's characteristics (i.e. paid, not paid, outstanding, etc.), and the total invoice amounts that were eventually returned to Big Lake as the result of Sanders Oil's non-payment. Ryan stated that Sanders Oil was having cash flow problems which was noted on their account with SBC.
Ryan confirmed the total invoice amount Big Lake factored was $49,488.93; the invoice amount collected from Big Lake's factoring was $15,931.19; the amount charged back to Big Lake as a result of *88 Sanders Oil's non-payment was $33,000, and the amount SBC charged for their services was $3,353.00. In addition, Ryan stated sixty-nine Big Lake invoices were factored to SBC; Sanders Oil paid forty-one of those invoices while twenty-eight invoices were unpaid. Ryan testified that SBC did not have any interest in the twenty-eight outstanding invoices owed by Sanders Oil.
Ryan could not recall whether a notice was sent to Sanders Oil regarding the ceasing of payments to SBC, however, a Collection Report was sent to Sanders Oil, which Ryan believed served as notice. Nonetheless, Ryan confirmed the Collection Report was sent after the underlying litigation began, but not before.
Gail Lynn Sanders
Sanders was an oil and gas operator, the owner of Sanders Oil, and had been conducting business on her own since the death of her husband in 2008. She testified Johnson would often communicate with the site workers and signed invoices for Sanders Oil. Sanders explained after Big Lake factored her invoices to SBC, Hernandez called her, requesting she send her payments to Big Lake rather than SBC. She was reluctant because it could result in a double payment and without proof the factored invoice had been paid. After receiving two requests from Hernandez to pay Big Lake directly, and after being served in the underlying lawsuit, she reviewed the Big Lake invoices and found what she believed were inaccuracies. Sanders, however, never contested the validity of those invoices or disputed the work performed by Big Lake prior to commencement of the underlying litigation. She also testified she believed some of the work in the invoices was incorrect; specifically, she explained that part of the work performed in a specific invoice for a particular date was not possible.
At trial, she admitted she paid Johnson directly, however, Sanders maintained Johnson was not an employee of Sanders Oil but an independent contractor. Sanders stated her understanding was Johnson was responsible for a variety of wells in a particular area, two of which belonged to Sanders Oil. Sanders maintained she eventually had to engage another company to redo some of the work Big Lake had performed.
Sanders verified she received the SBC letter; asserted she had never interacted with Ryan at SBC, but acknowledged Kenneth Stahl, Sanders Oil's then-comptroller, signed the letter for Sanders Oil. Sanders did not recall sending any payments to SBC, but asserted that was part of Stahl's duties. Sanders averred Sanders Oil had sent nine payments after Big Lake factored their invoices: eight to SBC and one to Big Lake. Upon Sanders review of Sanders Oil's payments as the result of stipulations at trial, Big Lake withdrew four of the invoices. In an email from Sanders to Hernandez prior to the litigation, Sanders explained to Hernandez that Sanders Oil was facing financial difficulties but would pay Big Lake in full. Sanders stated she ceased payments once Big Lake filed suit and, in an effort to avoid paying twice, requested proof of payment to SBC.
Sanders acknowledged the different dollar amounts Big Lake demanded for the outstanding invoices which resulted in her being uncertain as to which amount was valid. Sanders further testified she believed the amounts charged in the invoices were unreasonable because she had to redo some of the work Big Lake performed. Sanders confirmed the various amounts Big Lake demanded from Sanders Oil for non-payment under their contract.
*89 Jana Elizabeth Johnson
Jana Johnson ("Johnson") testified that she is a licensed attorney and was retained by Big Lake to pursue a lawsuit for the unpaid invoices owed by Sanders Oil. Johnson testified to the total amount of attorney's fees Big Lake had incurred in the underlying litigation.
J.W. Johnson
J.W. Johnson, (J.W.) Big Lake's attorney testified to his representation of Hernandez in the underling lawsuit and in prior lawsuits. He testified to the legal fees Big Lake had incurred.
Motion to Dismiss
After Big Lake rested, Sanders Oil made a motion for directed verdict. First, Sanders Oil argued there was no oral contract because the terms of the agreement were indefinite, thus, the alleged agreement lacked the acceptance requirement to form a contract. Second, there was no evidence as to the amount owed by Sanders Oil. Third, Sanders Oil attacked the evidence underpinning the damages model by arguing the lack of field notes rendered the judgment legally insufficient. Last, Sanders Oil claimed Big Lake failed to satisfy a condition precedent, that is, when the lawsuit was filed, the invoices were still owned by SBC not Big Lake. In addition, Sanders Oil requested a presumption of spoliation because of the missing field notes. The trial judge denied the motion, requested that Big Lake address the condition precedent issue, and then specifically denied the motion based on Sanders Oil's condition precedent argument. The trial court implicitly denied the requested spoliation presumption by not acknowledging the request or applying the presumption.
The trial judge found a valid contract existed and a duly authorized representative of Sanders Oil entered into the agreement with Big Lake. The trial court entered a judgment for Big Lake in the amount of $25,614.61 on a claim for services and awarded attorney fees of $7,200.00. No findings of fact or conclusions were requested or filed.
ISSUES
Sanders Oil brings three issues on appeal. First, Sanders Oil argues that the trial court erred in entering judgment for Big Lake because there was legally and factually insufficient evidence that Big Lake satisfied a condition precedent of formally revoking the assignment of Sanders Oil's invoices to SBC. Second, Sanders Oil asserts the evidence is legally and factually insufficient to support the judgment of $25,614.61. Third, Sanders Oil argues the evidence Big Lake intentionally spoliated documents that would have provided evidence of the amount actually owed. Further, had the presumption been applied, Sanders asserts the missing field notes would have supported their position. Thus, according to Sanders, the damages are speculative, and were awarded in error.
Big Lake responds that the assignment of the invoices to SBC merely created an agency relationship with SBC and did not transfer ownership. In the alternative, Big Lake maintains the factoring agreement did not create a condition precedent. Second, Big Lake asserts the trial court did not make factual findings regarding the dollar amount of unpaid invoices, and there is legally and factually sufficient evidence to support the judgment. Last, Big Lake argues they had no duty to preserve documents.
DISCUSSION
Condition Precedent
Sanders Oil's first issue on appeal is that the trial court erred by not finding Big *90 Lake's breach of contract claim barred by the affirmative defense of failing to satisfy a condition precedent. This argument implicitly assumes there is a condition precedent to the underlying contract between Sanders Oil and Big Lake. We disagree.
1. Standard of Review
A "no evidence" or legal insufficiency point is a question of law which challenges the legal sufficiency of the evidence to support a particular fact-finding. Serrano v. Union Planters Bank, N.A. , 162 S.W.3d 576, 579 (Tex.App.-El Paso 2004, pet. denied). There are two separate "no evidence" claims. Id. When the party with the burden of proof receives an unfavorable finding, the point of error challenging the legal sufficiency of the evidence should be that the fact or issue was established as "a matter of law." Id. When the party without the burden of proof appeals an unfavorable finding, the challenge is one of "no evidence to support the finding." Id. ; In re Estate of Livingston , 999 S.W.2d 874, 879 (Tex.App.-El Paso 1999, no pet.).
We will sustain a legal sufficiency or "no-evidence" challenge if the record shows: (1) the complete absence of a vital fact; (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a scintilla; or (4) the evidence establishes conclusively the opposite of the vital fact. City of Keller v. Wilson , 168 S.W.3d 802, 810 (Tex. 2005) ; El Paso Independent School District v. Pabon , 214 S.W.3d 37, 41 (Tex.App.-El Paso 2006, no pet.). We consider the evidence in the light most favorable to the verdict and indulge every reasonable inference that would support it. City of Keller , 168 S.W.3d at 822. Even if evidence is undisputed, the trial court may draw whatever inferences it wishes so long as more than one inference is possible. Id. at 821. However, if the evidence allows only one inference, neither the trier of fact nor the reviewing court may disregard it. Id. We are also mindful that the trier of fact is the sole judge of the credibility of the witnesses and the weight to be given their testimony. Id. at 819. When there is conflicting evidence, it is the province of the trier of fact to resolve such conflicts. Id. at 820. In every circumstance in which a reasonable trier of fact could resolve conflicting evidence either way, the reviewing court must presume it did so in favor of the prevailing party, and disregard the conflicting evidence in its sufficiency review. Id. at 821. If the evidence at trial would enable reasonable and fair-minded people to differ in their conclusions, then the trier of fact must be allowed to do so. Id. at 822. So long as the evidence falls within this zone of reasonable disagreement, we may not substitute our judgment for that of the trier-of-fact. Id. The ultimate test for legal sufficiency is whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review. Id. at 827.
In reviewing a challenge to the factual sufficiency of the evidence supporting a vital fact, we must consider, weigh, and examine all of the evidence in the record, both supporting and against the finding, to decide whether the verdict should be set aside. Plas-Tex, Inc. v. U.S. Steel Corp. , 772 S.W.2d 442, 445 (Tex. 1989). When a party attacks the factual sufficiency of an adverse finding on an issue on which the opposing party has the burden of proof, we should set aside the verdict only if the evidence supporting the jury finding is so weak as to be clearly wrong and manifestly unjust. See Cain v. Bain , 709 S.W.2d 175, 176 (Tex. 1986). We are not permitted to substitute our judgment *91 for that of the jury. Golden Eagle Archery, Inc. v. Jackson , 116 S.W.3d 757, 761-62 (Tex. 2003). Further, we bear in mind that the jury is the sole judge of the credibility of witnesses and the weight to be given to their testimony. Id.
2. Condition Precedent
Where a party generally avers that all conditions precedent are satisfied, they need only prove those that are specifically denied by the opposite party. TEX.R.CIV.P. 54 ; Associated Indem. Corp. v. CAT Contracting, Inc. , 964 S.W.2d 276, 283 n.6 (Tex. 1998). A party asserting an affirmative defense to a contract as a matter of law carries the burden of proof at trial. Pagosa Oil & Gas, L.L.C. v. Marrs & Smith P'ship , 323 S.W.3d 203, 219 (Tex.App.-El Paso 2010, pet. denied) ; see also Baeza v. Hector's Tire and Wrecker Service, Inc. , 471 S.W.3d 585, 591 (Tex.App.-El Paso 2015, no pet.) (explaining how the defendant asserting the affirmative defense of accord and satisfaction has the burden of proof to establish its existence). Even so, courts have excused nonperformance of a condition precedent if the performance would cause extreme forfeiture or penalty and it is not an essential part of the contract. See Sammons Enteres., Inc. v. Manley , 540 S.W.2d 751, 755-56 (Tex.App.-Texarkana 1976, writ ref'd n.r.e.) ; see also Lesikar Constr. Co. v. Acoustex, Inc. , 509 S.W.2d 877, 881 (Tex.Civ.App.-Fort Worth 1974, writ ref'd n.r.e.).
In the present case, the trial court found that there was no condition precedent in the underlying contract by finding there was a valid, enforceable contract.
3. Applicable Law
A "condition precedent" to a contract is an act or event that must occur before a right can accrue to enforce a contractual obligation. Solar Applications Eng'g, Inc. v. T.A. Operating Corp. , 327 S.W.3d 104, 108 (Tex. 2010). Language such as "if," "provided that," "on the condition that," or some other conditional phrase is usually used to create a condition precedent to performance (i.e. conditional performance). Id. at 109 ; Hohenberg Bros. v. George E. Gibbons & Co. , 537 S.W.2d 1, 3 (Tex. 1976). The absence of such language indicates the parties intended to make a promise rather than impose a condition. Solar Applications , 327 S.W.3d at 109 ; Criswell v. European Crossroads Shopping Ctr., Ltd , 792 S.W.2d 945, 948 (Tex. 1990). If the parties' intent is not clear from the language of the contract and another reasonable interpretation is possible, the agreement will be interpreted as creating a covenant rather than a condition to prevent forfeiture of the contract. Criswell , 792 S.W.2d at 948 ; Hohenberg Bros. , 537 S.W.2d at 3.
An "assignment" refers to the transfer of property or some right or interest from one person to another. Pagosa Oil , 323 S.W.3d at 211. Parties can agree to make a complete assignment of a contract or may assign specific rights in a contract while maintaining the remainder of the rights in the contract. See id. at 212 (recognizing that parties may assign cause of actions in spite of a general anti-assignment clause); see also River Consulting, Inc. v. Sullivan , 848 S.W.2d 165, 169 (Tex.App.-Houston [1st Dist.] 1992, writ denied) (recognizing that a party made a valid assignment of a right in the underlying contract while maintaining the remaining rights), disapproved on other grounds , Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc. , 960 S.W.2d 41 (Tex. 1998).
4. The "Condition Precedent" and "Assignment"
While Sanders Oil maintains that Big Lake's factoring of the invoices *92 created a condition precedent to the contract, we decline to recognize the creation of a condition precedent under these facts. Sanders Oil's obligation to pay arose when Big Lake completed each of the services described in each invoice; Sanders Oil in fact paid for many of the invoices without issue up until they began to face financial hardships and when Big Lake filed suit. In addition, neither the letter from SBC to Sanders Oil nor at any point during the underlying litigation did Sanders Oil establish that their payment was only due if , provided that , or on the condition that Big Lake remove, revoke, or reclaim the factored invoices Big Lake made to SBC.[2] We are unable to conclude that Big Lake was required to revoke the invoice factoring as a condition precedent to Sanders Oil paying the underling invoices and, indeed, uphold the judgment of the trial court in light of considering all of the evidence.
Moreover, we do not find that Big Lake's factoring surmounted to assigning a cause of action, which would result in the breach-of-contract cause of action no longer belonging to Big Lake. See River Consulting, Inc., 848 S.W.2d at 169 ; see also Duke v. Brookshire Grocery Co., 568 S.W.2d 470, 472 (Tex.Civ.App.-Texarkana 1978, no writ) (where owner assigns all interest in a cause of action, parting with both legal and equitable title, he cannot bring suit, except in a representative capacity and with authority for the owner of the claim, as the assignor no longer owns any part of the claim and lacks the justiciable interest that is necessary to maintain any action). Here, the assignment was for present and future accounts receivable only and was not inclusive of a cause of action that may have arisen from the invoices between the original parties. See SAS Institute, Inc. v. Breitenfeld , 167 S.W.3d 840, 841 (Tex. 2005) (explaining that when a written instrument is worded so that it can be given a definite meaning or interpretation, it will be interpreted as a matter of law). Moreover, SBC agreed, at trial, the assignment had been terminated as the result of Hernandez's repurchase of the invoices. Sanders Oil's first issue on appeal is therefore overruled.
Evidence of Damages
In a second issue, Sanders Oil challenges the award of damages in the amount of $25,614.61, claiming that the evidence is both legally and factually insufficient to support that award.
1. Standard of Review
"We review challenges to the amount of a damages award by the same standard as any other challenge to a court's finding." Baeza , 471 S.W.3d at 595. We review legal sufficiency de novo whereas we review factual sufficiency with a more deferential standard. Reliance Nat. Indem. Co. v. Advance'd Temporaries, Inc. , 227 S.W.3d 46, 50 (Tex. 2007).
When addressing a legal sufficiency challenge to support a fact finder's findings on an issue in which the appellant did not have the burden of proof at trial, we review the entire record, credit favorable evidence if a reasonable fact finder could, and disregard contrary evidence unless reasonable jurors could not. City of Keller , 168 S.W.3d at 822, 827 ; Telesis/Parkwood Ret. I, Ltd. v. Anderson , 462 S.W.3d 212, 222 (Tex.App.-El Paso 2015, no pet.) ;
*93 Pay & Save, Inc. v. Martinez , 452 S.W.3d 923, 925 (Tex.App.-El Paso 2014, pet. denied). We sustain a legal sufficiency challenge when, inter alia , the offered evidence to establish a vital fact does not exceed a scintilla. Kroger v. Texas Ltd. Partnership v. Suberu , 216 S.W.3d 788, 793 (Tex. 2006), citing City of Keller , 168 S.W.3d at 810. "When the evidence offered to prove a vital fact is so weak as to do no more than create a mere surmise or suspicion of its existence, the evidence is no more than a scintilla and, in legal effect, is no evidence." Jelinek v. Casas , 328 S.W.3d 526, 532 (Tex. 2010), quoting Kindred v. Con/Chem. Inc. , 650 S.W.2d 61, 63 (Tex. 1983). Anything more than a scintilla of evidence is legally sufficient to support the fact finder's finding. Cont'lCoffee Prods. Co. v. Cazarez , 937 S.W.2d 444, 450 (Tex. 1996). More than a scintilla of evidence exists when the evidence supporting the finding, as a whole, would enable reasonable and fair-minded people to differ in the conclusions. Merrell Dow Pharm., Inc. v. Havner , 953 S.W.2d 706, 711 (Tex. 1997).
When addressing a factual sufficiency challenge to support a fact finder's findings on an issue in which the appellant did not have the burden of proof at trial, we consider, weigh, and examine all of the evidence in the record both in support of and contrary to the finding. Cain , 709 S.W.2d at 176 ; In re Estate of Hemsley , 460 S.W.3d 629, 637 (Tex.App.-El Paso 2014, pet. denied). The trial court's findings will be set aside only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and manifestly unjust. Hemsley , 460 S.W.3d at 637 ; see City of Keller , 168 S.W.3d at 822.
Under both legal and factual sufficiency challenges, the fact finder is the sole judge of the weight and credibility of the evidence. City of Keller , 168 S.W.3d at 819. When the evidence is conflicting, we must presume that the fact finder resolved the inconsistency in favor of the challenged finding if a reasonable person could do so. Hemsley , 460 S.W.3d at 637 ; see City of Keller , 168 S.W.3d at 821. We do not substitute our judgment for that of the fact finder if the evidence falls within this zone of reasonable disagreement. City of Keller , 168 S.W.3d at 822.
2. Applicable Law
A plaintiff will usually seek to recover damages for his expectation interest in the contract-damages that give the plaintiff the benefit of the bargain by putting him in as good a position as it would have been in if the contract had been performed. Dakil v. Lege , 408 S.W.3d 9, 12 (Tex.App.-El Paso 2012, no pet.) ("A non-breaching party is generally entitled to all actual damages necessary to put it in the same economic position in which it would have been had the contract not been breached"). Under this rule, a party should receive only the actual damages incurred, not less, not more. Baeza , 471 S.W.3d at 595.
3. Analysis
Sanders Oil makes three challenges to the legal sufficiency of the trial court's award of damages: (1) the damages amount was speculative because there were various amounts alleged before and during trial; (2) the damages amount could not be accurately produced since the supportive documentation required for the amounts was absent; and (3) because the damages amount was speculative, it was not recoverable.
Sanders Oil's first argument that the damages were speculative because of the various amounts presented can be easily resolved. In its original petition, Big Lake sought $39,355.88 in damages for breach of contract. Hernandez testified *94 that Big Lake factored Sanders Oil's invoices in the amount of $37,000 to SBC. Hernandez also testified that on the day of trial, Sanders Oil owed Big Lake $ 34,497.65, based on a spreadsheet provided by Big Lake detailing each invoice factored and outstanding. Ms. Johnson testified on the day of trial that Sanders Oil owed Big Lake $32,430.08, basing that number on the spreadsheet showing the $34,497.65 amount and thereafter subtracting payments by Sanders Oil. Hernandez testified that a different spreadsheet showed an accurate amount, $26,856.82, which was the outstanding balance owed at a particular point in time. The trial court awarded Big Lake a judgment of $25,641.61, based on the $26,856.82 figure minus a portion the trial judge found the plaintiff responsible for paying.
While there were several amounts presented before and after the commencement of the bench trial, the trial judge here obviously believed that Sanders Oil owed Big Lake some past-due amount for services rendered. The trial court awarded the lowest amount the testimonial and demonstrative evidence showed minus an amount the trial judge believed should have been paid by Big Lake. While the evidence may be conflicting, we must presume that the fact finder resolved these inconsistencies in favor of the judgment awarded. See Hemsley , 460 S.W.3d at 637 ; see also City of Keller , 168 S.W.3d at 821. We will not substitute our judgment for that of the trial court here, where the evidence presented for the amounts owed ranged in amounts, and the trial judge chose the lowest amount. See City of Keller , 168 S.W.3d at 822.
Sanders Oil's second argument that the absent, supportive documentation renders the evidence legally insufficient is also resolvable. While the field notes that usually accompanied the invoices were not presented at trial, the evidence demonstrated the field notes existed, but were unavailable at the time of trial: specifically, Hernandez testified that while moving Big Lake's place of business, the supportive field notes were misplaced. Since it is not our place to substitute the weight given to testimonial evidence and to resolve any conflicts in evidence against the judgment, we find here that the trial judge, as a fact finder, clearly believed Hernandez's account that they existed but had been lost.
In a third argument regarding the legal sufficiency, Sanders Oil argues that the damages amount was not recoverable as a matter of law since the amount was speculative. To support this argument, Sanders Oil points to several cases where courts in Texas found speculative damages to be non-recoverable as a result of a reviewing court finding no evidence or weak testimonial evidence in support of the damages. Each of these cases is, however, distinguishable on their facts. Two of the cases cited involved speculative damage awards based on future, projected approximations. See Int'l & G.N. Ry. Co. v. Benitos , 59 Tex. 326, 327 (1883) (where the Texas Supreme Court reviewed the sufficiency of the evidence of injury to crops involving future estimates of the crops' probable value at maturity); see also M & A Tech., Inc. v. iValue Group, Inc. , 295 S.W.3d 356, 366 (Tex.App.-El Paso 2009, pet. denied) (where this Court reviewed the sufficiency of the evidence for lost profits awarded to a new and unproven company and found it was pure speculation to say that the company would have been successful, let alone profitable in the future). The third case cited also involved projected approximations and was reviewed under a different statutory scheme. Malone v. E.I. du Pont de Nemours & Co. , 8 S.W.3d 710, 716 (Tex.App.-Fort Worth 1999, pet. denied) (where the reviewing court determined *95 that under a Deceptive Trade Practices Act cause of action, there was "speculative testimony" what was "no evidence of damages"). As we stated before, here the invoices are readily ascertainable, definitive amounts past due on already performed services. We find that there is more than a scintilla of evidence to support the fact finder's award of damages. City of Keller , 168 S.W.3d at 827.
Sanders Oil makes several arguments regarding the factual sufficiency of the evidence supporting the trial court's damages award: (1) that there was factually insufficient evidence Big Lake knew which invoices had been paid; (2) that there was factually insufficient evidence that the sums Sanders Oil paid were applied to the correct invoices; (3) there was factually insufficient evidence the charges under the invoices were reasonable and necessary; (4) that there was factually insufficient evidence as to whether the invoice amounts should have been paid by Sanders Oil or the surface owners; (5) that there was factually insufficient evidence that the work under invoices not supported by field notes was performed at all; (6) that the invoices were not meaningfully reviewed by a Sanders Oil representative; and (7) that the charges in the disputed, factored invoices were not similar in amount to similar charges under the invoices not factored or the invoices supported by field notes.
First, it is important to restate the trial court's resolution in determining the damages award: it considered the various amounts alleged before and throughout the litigation, selected the lowest amount, and then deducted a portion from that amount for which it found Big Lake responsible. This case presents a very similar set of facts this Court recently faced involving an oral contract and disputed invoices.
In Baeza , the parties entered into an oral services contract whereby the plaintiff performed hauling services on an as-needed basis for the defendant's trucking company. Baeza , 471 S.W.3d at 588. The defendant would receive a customer request, notify the plaintiff of the requested, the plaintiff would perform, the plaintiff would give the defendant a "load ticket," and the defendant would bill the customer and finally pay the plaintiff after receiving payment. Id. After a dispute arose regarding compensation under the agreement, the plaintiff ceased performance and subsequently retained an attorney in order to demand payment for the unpaid "load tickets" (approximately $15,000) and attorney's fees (of $250). Id. The defendant did not respond, but later sent two checks (totaling approximately $6,000) without explanation. Id. The plaintiff deposited the checks and subsequently sent the defendant a letter requesting the balance (approximately $10,000). Id.
Months later, the plaintiff sued alleging breach of contract, requesting the balance. Baeza , 471 S.W.3d at 589. In support of its claim, the plaintiff attached several invoices it allegedly submitted to the defendant in addition to a sworn account listing invoice amounts and payments without totals. Id. At a bench trial, both parties acknowledged the existence of the oral contract, agreed to the invoice process, and agreed that the defendant was entitled to 5 percent commission on each invoice. Id.
In resolving the first evidentiary sufficiency challenge on appeal in Baeza , this Court determined that the trial court erred in crediting a disputed payment in calculating the damages award. Baeza , 471 S.W.3d at 596. "The undisputed evidence at trial revealed that [the plaintiff] never actually received [this payment]." Id. In addition, "and more importantly, [the defendant]'s *96 office manager testified that she had no record that the check she reported wrote for [the payment amount] cleared the bank." Id. This rationale drives our resolution of the third, fourth, and sixth factual sufficiency arguments Sanders Oil raises. Big Lake performed work that was requested by one of Sanders Oil's representatives. Johnson, the responsible Sanders Oil supervisor for the Big Lake work, confirmed that each of the invoices involved necessary work that had been completed by Big Lake. We find no basis to question whether these services were reasonable or necessary as it was undisputed that the work (not the charged amounts or the invoices themselves) was necessary. As to whether the invoices were meaningfully reviewed, we find this argument without merit. Johnson, the responsible Sanders Oil supervisor for the Big Lake work testified he was responsible for the work. Sanders herself testified that Johnson was in contact with engineers on site very often that Johnson would sign the invoices for the work performed. As to whether the payment responsibility rested on Sanders Oil or the surface owner, the trial court made a specific finding as to which amount it believed Sanders Oil's responsibility was and subtracted the amount it found the surface owner requested.
Baeza also sheds light on Sanders Oil's first and second factual sufficiency challenges: that Big Lake did not know which invoices were paid and that the sums paid were incorrectly applied. In Baeza , this Court determined that the balance on the sworn account, the balance testified to at trial, and the balance the exhibits presented at trial exceeded the court's award in reviewing a challenge to matching disputed invoices. Baeza , 471 S.W.3d at 598. Here, the trial court chose the lowest amount of those presented at trial, of which was supported by testimonial and demonstrative evidence.
As to whether the work was performed at all and the varied invoice amounts relative to the similar work performed, we find, that upon a review of the record, these assertions are resolvable. Hernandez testified as to what Big Lake built in addition to a variety of other projects that Big Lake performed for Sanders Oil. Sanders testified that the work detailed in a particular invoice could not have been performed due to timing conflicts. Sanders also testified that after reviewing the disputed invoices in more detail she found what she believed to be errors. Sanders, however, never contested the invoice's performance or amounts prior to the litigation's commencement. Sanders also testified at trial that she was unwilling to pay for some of the invoices because she believed Big Lake was not entitled to payment as she paid to redo some of the work performed by Big Lake. Lastly, Johnson testified that he reviewed the work performed by Big Lake, he reviewed the field notes before signing off on the invoices, and found the amounts appropriate.
Having considered all of the evidence, we conclude the trial court's judgment is not so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. Cain , 709 S.W.2d at 176. Issue Two is overruled.
Spoliation
In a third issue, Sanders Oil claims that the Big Lake spoliated documents that would have provided evidence of the amounts owed, creating a presumption that the damages were speculative, and that it was therefore error for the trial court to award those damages.
1. Standard of Review and Applicable Law
The question of whether a spoliation sanction or presumption is justified *97 requires a court to consider "(1) whether there was a duty to preserve evidence[;] (2) whether the alleged spoliator breached that duty; and (3) whether the spoliation prejudiced the non-spoliator's ability to present its case or defense." Miner Dederick Const., LLP v. Gulf Chem. & Metallurgical Corp. , 403 S.W.3d 451, 465 (Tex.App.-Houston [1st Dist.] 2013, pet. denied). "We review the trial court's implied rejection of the request for a spoliation presumption for an abuse of discretion." Adobe Land Corp. v. Griffin, L.L.C. , 236 S.W.3d 351, 357 (Tex.App.-Fort Worth 2007, pet. denied) (citing Wal-Mart Stores, Inc. v. Johnson , 106 S.W.3d 718, 723 (Tex. 2003) ). If we find the trial court abused its discretion by denying the spoliation finding, the failure to apply the presumption was improper. See Clark v. Randalls Food , 317 S.W.3d 351, 356 (Tex.App.-Houston [1st Dist.] 2010, pet. denied). If, however, we find the trial court did not abuse its discretion by denying a spoliation finding, we do not consider any presumption related to spoliation of evidence and review the no-evidence standard of review to determine whether there is more than a scintilla of evidence to preclude the damages award. Clark , 317 S.W.3d at 356 ; Griffin , 236 S.W.3d at 357.
To determine whether a trial court abused its discretion, we must decide whether the trial court acted without reference to any guiding rules or principles; in other words, we must decide whether the act was arbitrary or unreasonable. Mercedes-Benz Credit Corp. v. Rhyne, 925 S.W.2d 664, 666 (Tex. 1996). An abuse of discretion does not occur where the trial court bases its decisions on conflicting evidence. In re Barber, 982 S.W.2d 364, 366 (Tex. 1998). A trial court has no discretion in determining what the law is or in applying the law to the facts. In re Paso Del Norte Surgery Ctr. , 281 S.W.3d 521, 524 (Tex.App.-El Paso 2008, no pet.). Thus, a clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion. Id.
a. Duty to Preserve Evidence
An opposing party must demonstrate that the non-producing party had a duty to preserve the evidence in question before any failure to produce evidence may be viewed as a discovery abuse. Wal-Mart Stores, Inc. v. Johnson , 106 S.W.3d 718, 722 (Tex. 2003). A duty to preserve evidence arises only when (a) a party knows, or reasonably should know, that there is a substantial chance that a claim will be filed, and (b) that evidence in its possession or control will be potentially relevant to that claim. See ids="9115037" index="91" url="https://cite.case.law/sw3d/106/718/#p723">id. The duty is not so encompassing as to require a litigant to keep or retain every document in its possession, however, "[a] party should not be able to subvert the discovery process and the fair administration of justice simply by destroying evidence before a claim is actually filed." Trevino v. Ortega , 969 S.W.2d 950, 955 (Tex. 1998) (Baker, J., concurring).
To show a duty existed, Sanders Oil concludes that "there is no question that [Big Lake] knew and understood that it was under a duty to preserve and produce the field notes." Sanders Oil supports this conclusion by claiming that Hernandez testified that the field notes were maintained at its office and that it both knew and understood that it was under a duty to preserve and produce the field notes. A party can anticipate litigation before it receives actual notice of potential litigation. Nat'l Tank Co. v. Brotherton , 851 S.W.2d 193, 204 (Tex. 1993). "Common sense dictates that a party may reasonably anticipate suit being filed ... [even] before the Plaintiff manifests an intent to sue." Id. Sanders Oil points to Hernandez's deposition, the fact that the invoices were disputed *98 at trial, and the fact that Hernandez (in his capacity representing Big Lake) understood it was Big Lake's burden to prove the damages it alleged. Each of these assertions, however, do not show Big Lake knew or should have known of a substantial chance that a claim would be filed. While the record is not specific as to when Big Lake moved locations, each of these assertions would have only alerted Big Lake of the necessity to preserve the relevant invoices after the legal proceedings commenced, not before. All of the disputed invoices were presented at trial, both with and without field notes. Because of Big Lake's invoice process, in addition to the fact that Johnson (a then-employee of Sanders Oil) testified as to the validity and accuracy of the invoices, the field notes may not have even been necessary to support the damages award. Additionally, Sanders never questioned the validity of the invoices until the legal proceedings commenced and only then wanted to review the relevant field notes. While the fact that Big Lake requested payment when Sanders Oil ceased payments, after reassurances, Sanders Oil continued paying.
Because Sanders Oil failed to show that Big Lake knew or should have known there was a "substantial chance" of litigation, we conclude that Sanders Oil failed to satisfy the first prong that Big Lake had a duty to preserve the field notes for all of the disputed invoices. But see Clark , 317 S.W.3d at 357 (Where the court there determine that because the alleged spoliator "acknowledged it knew there was a 'substantial chance' a claim would be filed[,]" the court concluded the undisputed evidence showed the first prong was satisfied.). As a result, we find that Sanders Oil has failed to show a duty existed, and therefore the failure to apply a spoliation presumption was not in error. We overrule Sanders Oil's third issue.
CONCLUSION
Because we find that there was no condition precedent to performance, that the damages award is legally and factually sufficient, and that Sanders Oil failed to show there was a duty to preserve evidence in order to apply a spoliation presumption, we affirm the trial court's findings.
Hughes, J. (Not Participating)

See Monardes v. State , No. 08-00-00512-CR, 2002 WL 31430551, at *1 (Tex.App.-El Paso Oct. 31, 2002, no pet.) (not designated for publication)(Describing a "factoring company" as a company "in the business of buying invoices from companies needing immediate working capital.").

Indeed, contractual rights may be assigned orally unless the contract giving rise to the claim, or a statute pertaining to the claim, requires a written transfer. Adkins Servs., Inc. v. Tisdale Co., Inc. , 56 S.W.3d 842, 845 (Tex.App.-Texarkana 2001, no pet.). But this was not raised in the present case.