

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| GILBERT ARCIDES, | § | No. 08-22-00046-CV |
| Appellant, | § | Appeal from the |
| v. | § | 143rd Judicial District Court |
| RAUL ANGEL ROJAS AND DEEPWELL ENERGY SERVICES, LLC, | § | of Reeves County, Texas |
| | § | (TC# 20-01-23349-CVR) |
| Appellees. | | |

**O P I N I O N**

**BACKGROUND**

This case involves a three-vehicle collision that occurred on Texas State Highway 17, about fifteen miles south of Pecos, Texas. In two issues, Appellant (Arcides), challenges the jury's findings of his negligence. In Issue One, Arcides argues that because he owed no legal duty, the trial court abused its discretion in submitting a question in the charge relating to his proportionate responsibility. In Issue Two, Arcides maintains the jury's findings of his negligence are legally and factually insufficient. We affirm.

***Factual Background***

In November of 2019, Appellee, Raul Rojas (Rojas), was hauling a water tank for his employer, Appellee, Deepwell Energy Services, LLC (Deepwell).[1] Rojas was driving southbound on Texas State Highway 17 (Highway 17). Highway 17 is a two-way, one-lane highway with a speed limit of 75 miles per hour. Driving several hundred feet ahead of Rojas was Carlos Zamarripa (Zamarripa), who was also traveling southbound on Highway 17.[2] Arcides was approaching in the northbound lane, driving on the other side of the road in the opposite direction from Rojas and Zamarripa.

As the three vehicles traveled in their respective directions, a sandstorm emerged. There was no visibility, and winds of 60 to 70 miles per hour. All three drivers continued to drive, right into the sandstorm. Once inside the sandstorm, Rojas slowed down to 41 miles per hour in the southbound lane. Zamarripa slowed down and was traveling in the center of the southbound lane, at a speed of 1 to 2 miles per hour—"near stopped." Due to the lack of visibility, Rojas did not see Zamarripa's truck "near stopped" ahead of him. Rojas's truck struck Zamarripa's truck, then Zamarripa's truck crossed into the opposite lane, colliding into Arcides's truck. At the time of impact, Rojas was traveling 33 miles per hour, while Zamarripa was "near stopped" traveling at 1 mile per hour, and Arcides was traveling 3.6 miles per hour.

However, at trial, Arcides testified he did not enter the sandstorm and instead, pulled over. According to Arcides, at the time of the collision, he was parked on the side of Highway 17 to avoid the oncoming storm. However, expert testimony revealed Arcides was not pulled over on the side of the road. Accident reconstruction and data extracted from Arcides's truck further confirmed Arcides was not pulled over and had been driving on the highway at the time of impact.

---

[1] At trial, Deepwell stipulated Rojas was in the course and scope of his employment at the time of the accident.

[2] Although Zamarripa was a party to the original suit as an intervenor, he is not a party to this appeal.

2

During the charge conference, counsel for Arcides objected to the submission of Arcides in Question One, which asked, "Did the negligence, if any, of those named below proximately cause the occurrence in question?" Counsel for Arcides also objected to the inclusion of Arcides in the percentage allocation of Arcides's negligence in Question Two, arguing there was "no evidence that a breach approximately caused the occurrence in question." The trial court overruled the objections and Questions One and Two were submitted to the jury.

As to Question One, the jury answered in the affirmative for each of the three drivers, finding the negligence of each of the drivers had proximately caused the occurrence in question. As to Question Two, the jury found Rojas 50% negligent, Zamarripa 40% negligent, and Arcides 10% negligent. Based upon the jury's verdict, the total awarded in favor of Arcides amounted to $2,250,000.00 in damages, but was ultimately reduced to $1,252,300.90 by the jury's finding of proportional negligence.

### *Procedural Background*

In January of 2020, Arcides filed suit against Rojas and Deepwell in the 143rd District Court of Reeves County. His pleadings included claims of negligence and damages for personal injuries resulting from the auto collision. A jury trial was held in October of 2021. After the jury rendered its verdict, Arcides contested the jury's findings of his negligence and proportionate responsibility by filing a motion for judgment notwithstanding the verdict with alternative motion for new trial, which was denied by written order. This appeal followed.

## DISCUSSION

In Issue One, Arcides maintains that because he did not owe a legal duty, the trial court erred in its inclusion of Arcides in the percentage allocation of proportionate responsibility in Question Two. In Issue Two, Arcides argues the jury's findings as to his negligence and

3

apportionment are legally and factually insufficient. Arcides requests that this Court reverse the trial court's judgment, strike his percentage of fault, and reallocate his prior apportionment pro-rata between Rojas and Zamarripa, or alternatively, grant a new trial.

We begin with Issue Two because we find it dispositive of Issue One. For the reasons that follow, we affirm.

## LEGAL AND FACTUAL SUFFICIENCY

### *Standard of Review*

When a party attacks the legal sufficiency of an adverse finding on an issue in which it did not have the burden of proof, it must demonstrate on appeal that no evidence exists to support the adverse finding. *Graham Cent. Station, Inc. v. Pena*, 442 S.W.3d 261, 263 (Tex. 2014). We consider the evidence in the light most favorable to the verdict and indulge every reasonable inference that would support it. *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005). "Anything more than a scintilla of evidence is legally sufficient to support the fact finder's finding." *Sanders Oil & Gas, Ltd. v. Big Lake Kay Constr., Inc.*, 554 S.W.3d 79, 93 (Tex. App.—El Paso 2018, no pet.). The ultimate test for legal sufficiency is whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review. *E. Tex. Educ. Ins. Ass'n v. Ramirez*, 631 S.W.3d 908, 918 (Tex. App.—El Paso 2021, pet. denied).

In reviewing a factual sufficiency challenge, we must consider and weigh all of the evidence, and may set aside the verdict only if the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Jackson v. Williams Bros. Constr. Co. Inc.*, 364 S.W.3d 317, 324 (Tex. App.—Houston [1st Dist.] 2011, pet. denied). Under both a legal and factual sufficiency review, the jury, as fact finder, is the sole judge of the

4

credibility of witnesses and the weight to be given to their testimony. *Ramirez*, 631 S.W.3d at 918.

Accordingly, we may not substitute our judgment for that of the fact finder. *Id.*

### *Applicable Law*

A plaintiff asserting a negligence claim bears the burden of proving a legal duty, breach of that duty, and damages proximately caused by the breach. *IHS Cedars Treatment Ctr. of DeSoto, Tex., Inc. v. Mason*, 143 S.W.3d 794, 798 (Tex. 2004). The two elements of proximate cause are cause in fact and foreseeability. *Id.*

Under proportionate responsibility, the fact finder is entitled to proportion responsibility according to the relative fault of the actors, thus allowing a plaintiff to recover while reducing that recovery by the percentage for which the plaintiff was at fault. *Nabors Well Servs., Ltd. v. Romero*, 456 S.W.3d 553, 559–60 (Tex. 2015).

Section 33.003 of the Texas Civil Practice and Remedies Code provides:

(a)     The trier of fact, as to each cause of action asserted, shall determine the percentage of responsibility, stated in whole numbers, for the following persons with respect to each person's causing or contributing to cause in any way the harm for which recovery of damages is sought, whether by negligent act or omission, by any defective or unreasonably dangerous product, by other conduct or activity that violates an applicable legal standard, or by any combination of these:

(1)     each claimant;
(2)     each defendant;
(3)     each settling person; and
(4)     each responsible third party who has been designated under Section 33.004.

(b)     This section does not allow a submission to the jury of a question regarding conduct by any person without sufficient evidence to support the submission.

TEX. CIV. PRAC. & REM. CODE ANN. § 33.003. So long as the plaintiff's own responsibility does not exceed 50%, he is entitled to a recovery reduced by his responsibility percentage. *Id*. at § 33.001. The statute casts a wide net over conduct that may be considered in this determination,

including negligent acts or omissions, and any other conduct or activity that violates an applicable legal standard. *Romero*, 456 S.W.3d at 560. In sum, a plaintiff's contributory negligence should be considered in the apportionment of responsibility. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 33.003(a).

### *Analysis*

The evidence is legally and factually sufficient to support the jury's findings in Questions One and Two of the jury charge. Question One contemplated a negligence finding as to each of the three drivers. Question Two requested that the jury assess the drivers' comparative responsibility. The following was submitted to the jury:

### QUESTION NO. 1

Did the negligence, if any, of those named below proximately cause the occurrence in question?

Answer 'Yes' or 'No' for each of the following:

a. Raul Angel Rojas          _____

b. Carlos Zamarripa          _____

c. Gilbert Arcides           _____

If you have answered 'Yes' to Question No. 1, for more than one of those named below, then answer the following question . . . .

The percentage you find must total 100 percent. The percentages must be expressed in whole numbers. The percentage or responsibility attributable to any one named below is not necessarily measured by the number of acts or omissions found. The percentages attributable to any one need not be the same percentage attributed to that one in answering another question.

### QUESTION NO. 2

For each person you found caused or contributed to cause the occurrence in question, find the percentage of responsibility attributable to each.

a. Raul Angel Rojas    _____

b. Carlos Zamarripa    _____

c. Gilbert Arcides    _____

TOTAL      100%

Here, the jury's finding of Arcides's negligence is supported by legally and factually sufficient evidence.[3]

### a. Arcides's Duty and Breach

Arcides maintains, he "had neither the duty nor the ability to actively monitor the *opposite* roadway to see whether Mr. Rojas would ram Mr. Zamarripa and propel him into oncoming traffic." We disagree.

Contributory negligence contemplates an injured person's failure to use ordinary care regarding his own safety. *Kroger Co. v. Keng*, 23 S.W.3d 347, 351 (Tex. 2000); *see* TEX. CIV. PRAC. & REM. CODE ANN. § 33.002(a)(1). Thus, Arcides, as a driver on a public highway, had a duty to exercise ordinary care regarding his own safety. *See Kroger Co.*, 23 S.W.3d at 351. Every Texas motorist proceeding along a public roadway is under a duty, at all times, "to maintain a proper lookout for his own safety, and may not proceed blindly and in disregard of dangers that might reasonably be anticipated to exist." *De Winne v. Allen*, 277 S.W.2d 95, 98 (Tex. 1955); *Rohan v. Baker*, 470 S.W.2d 238, 241 (Tex. App.—Houston [1st Dist.] 1971, writ ref'd n.r.e.). Accordingly, Arcides had a duty to maintain a proper lookout for his own safety. *See De Winne*, 277 S.W.2d at 98.

---

[3] Because Arcides does not dispute the fact that damages occurred, we do not discuss harm element of a negligence claim below.

The duty to maintain a proper lookout while driving encompasses the duty to observe, in a careful and intelligent manner, traffic and the general circumstances in the vicinity. *Carney v. Roberts Inv. Co. Inc.*, 837 S.W.2d 206, 210 (Tex. App.—Tyler 1992, writ denied). Arcides himself testified he saw a "big old sandstorm, a real huge sandstorm coming down the highway." Arcides testified he did not drive directly into the sandstorm, but instead, decided to pull over about a half a mile before the sandstorm. However, data gathered from Arcides's truck module, along with the tire marks on the road, confirmed Arcides was not stopped and had been driving at the time of the collision. Data from Arcides's truck revealed he was traveling 18.8 miles per hour five seconds before impact, and 3.6 miles per hour at impact. Other evidence, including Arcides's own admission to the investigating DPS Trooper on scene, further supported he had driven into, and through, the same conditions as Rojas and Zamarripa, despite the lack of visibility. Accident reconstruction and expert testimony confirmed this.

Nevertheless, at trial, Arcides insisted he never entered the sandstorm and was not driving at the time of impact.

| Opposing Counsel: | So no matter what the experts say, no matter what the computer says, no matter what the police officers say, no matter what the location of your vehicle says after the accident shows, you're telling the jury and it's your testimony that you never entered the dust storm, that you saw it down the road, and you pulled over, and you sat there for 10 minutes in Park, and the dust storm came to you, correct? |
|---|---|
| Arcides: | Yes, sir. |

The jury was free to believe or disbelieve Arcides's contention. *See Ramirez*, 631 S.W.3d at 918.

Arcides's counsel also argued during closing arguments that pulling over was the safest decision to make given the circumstances. The jury was within its discretion to apply that standard to all drivers on the highway, including Arcides. The jury was also free to believe or disbelieve

the expert testimony of Victor Longoria, a Texas Department of Public Safety Trooper and U.S. Department of Transportation Officer and Auditor, who was hired to assess the causes of the collision amongst noncompliance of the federal regulatory rules and the Texas Transportation Code. Longoria testified that when conditions become severe due to visibility, such as in this case, a driver's "first priority" should be to reduce their speed, and if possible, pull off of the road completely. Evidence at trial established that Arcides was driving through the sandstorm, and seconds prior to impact, his speed dropped down to half seconds from 18.6, 18, 16.8, 15.4, 13.8, 12.5, 11.4, 9.5, 6, and ultimately 3.6 miles per hour at impact.

Given the data extracted from Arcides's truck, the jury could have found that Arcides should have pulled over, or in the alternative, that Arcides was driving too fast. As the sole judge of the credibility of witnesses and the weight to be given to their testimony and the evidence, it was within the jury's discretion to conclude that all three drivers were negligent for different reasons, and to different degrees. *See id.*

We find the evidence was legally and factually sufficient to enable a reasonable and fair-minded juror to conclude that at minimum, Arcides had a duty to maintain a proper lookout for his own safety, and Arcides's decision to continue driving through the sandstorm with zero visibility constituted a breach of that duty.

### b. Proximate Cause

Arcides maintains the evidence is legally and factually insufficient to support a finding that his actions proximately caused the crash.

The two elements of proximate cause are cause in fact (or substantial factor), and foreseeability.[4] *Mason*, 143 S.W.3d at 798. These elements cannot be satisfied by mere conjecture,

---

[4] We use the terms "cause in fact" and "substantial factor" interchangeably.

9

deduction, or speculation. *Id*. at 798–99. Cause in fact is established when the act or omission was a substantial factor in bringing about the injuries, and without it, the harm would not have occurred. *Id*. at 799. "Foreseeability means that the actor, as a person of ordinary intelligence, should have anticipated the dangers that his negligent act created for others." *Nixon v. Mr. Prop. Mgmt. Co., Inc.*, 690 S.W.2d 546, 549–50 (Tex. 1985).

### 1. Substantial Factor

Arcides argues the sandstorm, his presence on the highway during the sandstorm, and his "harmless" speed did not constitute a substantial factor in causing the accident or his injuries, but rather merely furnished a condition for the collision. According to Arcides, "the only substantial factor that gave rise to this crash was the propulsion of Mr. Zamarripa into oncoming traffic by Mr. Rojas"—*i.e.*, the collision was caused by Rojas rear-ending Zamarripa and propelling Zamarripa's truck into Arcides's truck, which according to Arcides, was not foreseeable.

When evaluating cause in fact, the test is "whether the negligent act or omission was a substantial factor in bringing about injury, without which the harm would not have occurred." *Doe v. Boys Clubs of Greater Dall., Inc.*, 907 S.W.2d 472, 477 (Tex. 1995) (internal quotations omitted). In other words, even if the occurrence would not have happened but for the defendant's conduct, the connection between the defendant and the plaintiff's conduct may not be too attenuated to constitute proximate cause. *Id.* Furthermore, it is well established that "more than one act may be the proximate cause of the same injury." *Lee Lewis Constr., Inc. v. Harrison*, 70 S.W.3d 778, 784 (Tex. 2001).

Appellees argue that Arcides's continued presence on the highway, traveling with zero visibility despite the approaching "wall of dirt," and his failure to maintain a proper lookout and take sufficient precautions regarding his own safety, constitutes a substantial factor. We agree.

10

Arcides drove into, and through, a sandstorm despite having no visibility. Zamarripa's truck collided with Arcides's truck while Arcides was traveling at speeds ranging from approximately 18 miles per hour to 3 miles an hour, through the sandstorm, causing his injuries. Even if the collision and his resulting injuries would not have happened but for Appellees' conduct, we cannot conclude the connection between Appellees' and Arcides's conduct was too attenuated, especially considering that "more than one act may be the proximate cause of the same injury." *Id.* Accordingly, we find the evidence was legally and factually sufficient to enable a reasonable and fair-minded juror to conclude Arcides's conduct was a substantial factor in the collision.

### 2. Foreseeability

To establish foreseeability, it is not necessary to show that the exact sequence of events was foreseeable; rather, only the general danger must be foreseeable. *Pitts v. Winkler Cnty.*, 351 S.W.3d 564, 573 (Tex. App.—El Paso 2011, no pet.) (quoting *Cnty. of Cameron v. Brown*, 80 S.W.3d 549, 556 (Tex. 2002)). The foreseeable danger here is that which comes with driving into and through a sandstorm on a two-way, one-lane highway with no visibility. It is not merely the foreseeable risk of "[o]ne truck rearending another and pushing it across the center stripe," as Arcides contends. Driving with reduced visibility is a dangerous condition, whether it is caused by night, weather conditions, or both. *State v. Gammill*, 442 S.W.3d 538, 541–42 (Tex. App.—Dallas 2014, pet. ref'd).

Arcides testified he had zero visibility, "couldn't see nothing when the sandstorm came through" and "couldn't see the hood" of his truck. Motorists "may not proceed blindly and in disregard of dangers that might reasonably be anticipated to exist." *Caterpillar Tractor Co. v. Cropper*, 767 S.W.2d 813, 815–16 (Tex. App.—Texarkana 1989, writ withdrawn). The jury heard testimony that the sandstorm could be detected by drivers from a distance; a Texas State Trooper

testified it was "your typical sandstorm that you get in Pecos a lot of the times. They don't come out of nowhere. It's very apparent they're coming." Other witnesses also testified the sandstorm could be seen "from a long ways away" and was described as a "tremendous" "wall of dirt."

A person of ordinary intelligence would have anticipated the danger—the danger of driving through a sandstorm with zero visibility on a two-way, one-lane highway that has a posted speed limit of 75 miles per hour. Thus, we find the evidence was legally and factually sufficient to enable a reasonable and fair-minded juror to conclude Archides's injuries were a foreseeable result of his conduct.

### c. Legal and Factual Sufficiency Conclusion

In sum, we have found the evidence was legally and factually sufficient for the jury to conclude Arcides had a duty to maintain a proper lookout for his own safety, and Arcides's act of driving through the sandstorm on a two-way, one-lane highway with zero visibility, constituted a breach of that duty. We have further found the evidence was legally and factually sufficient for the jury to conclude that Arcides's conduct was a substantial factor, and the general dangers were foreseeable and should have been reasonably anticipated by Arcides, thus establishing proximate cause. Thus, the jury's finding that Arcides's negligence proximately caused the occurrence in question is supported by more than a scintilla of evidence and is not against the great weight and preponderance of the evidence. *See Sanders Oil & Gas, Ltd.*, 554 S.W.3d at 93; *see also Ramirez*, 631 S.W.3d at 918. As with our review of the sufficiency of the evidence to support the negligence finding, we may only set aside the jury's determination of proportionate responsibility if the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust; we do not find that to be the case here, considering the jury found Arcides 10% negligent. *See Jackson*, 364 S.W.3d at 325. The jury is afforded wide latitude in performing its

sworn duty to serve as fact finder in allocating responsibility for an accident pursuant to Section 33.003 of the Texas Civil Practice and Remedies Code. *Rosell v. Cent. W. Motor Stages, Inc.*, 89 S.W.3d 643, 659 (Tex. App.—Dallas 2002, pet. denied). Accordingly, the evidence is legally and factually sufficient to support the jury's findings in Questions One and Two of the jury charge. Issue Two is overruled.

## JURY CHARGE SUBMISSION

In Issue One, Arcides maintains that because he did not owe a legal duty, the trial court erred in requesting the jury to apportion Arcides's responsibility in Question Two of the jury charge.

### *Standard of Review and Applicable Law*

Rule 278 of the Texas Rules of Civil Procedure requires the trial court to submit questions, instructions, and definitions raised by the pleadings and evidence. TEX. R. CIV. P. 278. This rule provides a directive and requires trial courts to submit requested questions to the jury if the pleadings and any evidence support them. *Elbaor v. Smith*, 845 S.W.2d 240, 243 (Tex. 1992). We review the trial court's submission of jury questions under an abuse of discretion standard. *Rosell*, 89 S.W.3d at 653. The trial court is afforded broad discretion in its submission of jury questions, so long as the questions fairly place the disputed issues before the jury. *Id.* In determining whether an alleged error in the jury charge is reversible, we must consider the pleadings, the evidence presented at trial, and the charge in its entirety. *Island Rec. Dev. Corp. v. Republic of Tex. Sav. Ass'n*, 710 S.W.2d 551, 555 (Tex. 1986).

### *Analysis*

To determine whether sufficient evidence supported submission of Question Two as to Arcides, we must examine the record for evidence supporting Arcides's negligence. *See* TEX. CIV.

13

PRAC. & REM. CODE ANN. § 33.003. Arcides maintains that because he did not owe a legal duty, the trial court erred in submitting a question as to his proportionate responsibility in the jury charge. However, because we have already found that the evidence was legally and factually sufficient to support the jury's finding as to Arcides's negligence, it follows that the trial court did not abuse its discretion in submitting Question Two as to his comparative responsibility. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 33.003(b) ("This section does not allow a submission to the jury of a question regarding conduct by any person without sufficient evidence to support the submission."). Issue One is overruled.

## CONCLUSION

For these reasons, we affirm.

YVONNE T. RODRIGUEZ, Chief Justice

May 30, 2023

Before Rodriguez, C.J., Palafox, and Soto, JJ.